Opinion
HARBIN-FORTE, P. J.
I. INTRODUCTION
The instant case involves an appeal from an order granting in part a judgment debtor’s claim of exemption filed in response to a levy on a bank account. The parties assert that the issue presented on appeal is one of first impression: Whether the judgment debtor’s exemption under Code of Civil Procedure section 704.070 for paid earnings traced to a deposit account is 75 percent of the paid earnings that had been in the account during the 30 days preceding the levy, or 75 percent of paid earnings that remain in the account on the date of the levy.
For the reasons stated below, we conclude that, as a matter of law, when a judgment creditor opts to levy on a bank account to enforce a judgment, the judgment debtor is entitled to claim an exemption for 75 percent of the paid earnings that remain in the deposit account on the date of the levy, as that *Supp. 5 balance is “the paid earnings that are levied upon” within the meaning of the exemption statute. (Code Civ. Proc., § 704.070, subd. (b)(2).)
Because the trial court’s order calculated the exemption based on the amount of the earnings that had been in the account during the 30 days preceding the levy, to the detriment of the judgment debtor, we must reverse that order and remand this case for further proceedings consistent with our ruling.
II. FACTS
The pertinent facts in this case are undisputed. On March 1, 2007,[1] the trial court entered a default judgment in favor of respondent Ford Motor Credit Company (Ford) and against appellant Ana Waters (Waters) in the amount of $17,018.78. On or about June 21, Ford, the judgment creditor, sought to enforce the judgment by levying upon Waters’s checking account at Wells Fargo Bank. On the date of the levy, the balance in the checking account was $1,782.63. That balance, along with a $75 fee (for a total of $1,857.63), was deducted from Waters’s bank account.
On or about June 25, Waters, the judgment debtor, timely filed her claim of exemption,[2] and on July 12, Ford filed an opposition to the claim of exemption, asserting that Waters had the burden of tracing the funds to an exempt source.
In response, Waters traced the funds in her account to net wages paid to her in the past 30 days. She demonstrated that she receives direct payroll deposits from her employer Northwest Air, and that such wages are directly deposited into her Wells Fargo Bank checking account. According to the bank statements, for the period from May 25 to June 26, her beginning balance was $302.12. There were three direct deposits from Northwest Air in the 30-day period ending on the date of levy as follows: on June 1 for $958.39, on June 11 for $2,664.45, and on June 15 for $1,015.36, for a grand total of $4,638.20 in net wages deposited into the account.[3]
*Supp. 6 On July 31, a hearing on the claim of exemption was held in the law and motion department. Both parties agreed that the controlling exemption statute is Code of Civil Procedure section 704.070, which, along with its subdivisions,[4] governs exemptions for “paid earnings” that can be traced into deposit accounts. Both agreed that subdivision (a)(2) defines paid earnings as “earnings . . . that were paid to the employee during the 30-day period ending on the date of the levy.” They disagreed, however, on how to apply subdivision • (b)(2), which designates the percentage amount of the exemption.
Waters advocated for a literal reading of the clause in subdivision (b)(2) of section 704.070, which expressly provides that “[s]eventy-five percent of the paid earnings that are levied upon ... are exempt. ..” (italics added). Waters interpreted the language to mean that the court must calculate the 75 percent exemption based on the amount of $1,782.63, or the balance of wages in the account on the date of the levy, since that was “the [amount] levied upon.” Under Waters’s theory, Ford could look to recover only approximately $446, or 25 percent of $1,782.63, and the balance, or approximately $1,337 (75 percent of that amount) belonged to her.
Ford took the position that section 704.070, subdivision (a)(1), defines “paid earnings” as earnings paid to the employee during the 30-day period ending on the date of the levy, and, based on that definition, it was entitled to 25 percent of all wages paid to Waters and deposited into the checking account during the 30-day period leading up to the date of the levy. It supported its position by focusing primarily on the words “paid earnings” in the exemption provision of subdivision (b)(2), and overlooking the words “that are levied upon,” which immediately follow “paid earnings.” Under Ford’s theory, the court was required to ignore the balance in the.account on the date of the levy. Instead, according to Ford, the court was required to calculate the 75 percent exemption based on the sum of $4,638.20, which represented the total amount of net wages deposited into the account during the 30-day period before the date of the levy. Thus, Ford claimed it was entitled to 25 percent of $4,638.20, or approximately $1,150.
The law and motion judge agreed with Ford’s interpretation of the exemption clause, ignored the balance in the account on the date of the levy, granted Waters’s claim of exemption in part, based on total wages deposited, and ordered the levying officer to release approximately $1,150 to Ford, with the balance of approximately $633 going to Waters.
*Supp. 7 Thus, under the court’s ruling, Waters received not an exemption of 75 percent of the paid earnings levied upon, but an exemption of only approximately 35 percent of those paid earnings. On August 24, Waters filed a timely notice of appeal from the order.
III. ANALYSIS
A. Appealability and Standard of Review
Orders granting or denying a claim of exemption are appealable. (§ 703.600; Schwartzman v. Wilshinksy (1996) 50 Cal.App.4th 619, 626 [57 Cal.Rptr.2d 790].) Waters and Ford agree that de novo review applies since this case involves application of the exemption statute, section 704.070, to a set of undisputed facts. As the controlling facts in the instant case are indeed undisputed, we concur that this appeal is subject to independent review by this court. (See In re Retirement Cases (2003) 110 Cal.App.4th 426 [1 Cal.Rptr.3d 790]; McMillin-BCED/Miramar Ranch North v. County of San Diego (1995) 31 Cal.App.4th 545, 553 [37 Cal.Rptr.2d 472] [where there is no conflict in the evidence, or an issue is presented on appeal upon undisputed facts, the appellate court is free to draw its own conclusions of law].)
B. The Enforcement of Money Judgments Statutory Scheme
We begin our analysis by noting that our Legislature has enacted a comprehensive and precisely detailed scheme governing enforcement of money judgments. This statutory scheme covers four chapters and a total of 24 articles setting out the powers, duties, rights, privileges and responsibilities of the judgment creditor, the judgment debtor, the levying officer, the court, and others who may be impacted by the controlling statutes. (See §§ 697.010-706.154.)
In sections 700.010 through 700.200, the judgment creditor is advised of all methods of levy available to enforce a money judgment. Those statutes tell the judgment creditor and levying officer how to levy on assets such as real property, growing crops, automobiles, and, as here relevant, bank accounts.
*Supp. 8 For each particular method of levy, the governing statute contains the rules and procedures for carrying out the levy. The judgment creditor is in complete control of which method of levy to use, but must also be bound by the statutory limitations imposed upon that method.
As a general rule, all property of the judgment debtor is subject to enforcement of a money judgment. (§ 695.010, subd. (a).) The California Constitution, however, requires the Legislature to protect from forced sale a certain portion of the homestead and other property of all heads of families. (Cal. Const., art. XX, § 1.5.) The immunity of certain property from enforcement of a money judgment is based on the theory that some types of property should not be taken to satisfy a judgment. The kinds and degrees of property exempt from levy are described in sections 704.010 through 704.210. The exemptions available to a judgment debtor are for the personal benefit of the judgment debtor. These exemptions relate to property that might ordinarily be subject to enforcement of a money judgment by execution or otherwise, but the debtor is allowed to retain all or part of this property for the protection of the debtor and the debtor’s family. The exemptions are wholly statutory and cannot be enlarged by the courts. (Estate of Brown (1899) 123 Cal. 399 [55 P. 1055]; Conlin v. Traeger (1927) 84 Cal.App. 730 [258 P. 433]; Estate of Silverman (1967) 249 Cal.App.2d 180, 183 [57 Cal.Rptr. 379]; Vineyard v. Sisson (1990) 223 Cal.App.3d 931, 938 [272 Cal.Rptr. 914]; see also 8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 159.)
The exemption laws are designed to facilitate the debtor’s financial rehabilitation and have the effect of shifting social welfare costs from the community to judgment creditors. (See Recommendation Relating to Enforcement of Judgments Law, 16 Cal. Law Revision Com. Rep. (1982) p. 1079.) Consequently, the exemption statutes should be construed, so far as practicable, to the benefit of the judgment debtor. (Lampley v. Alvares (1975) 50 Cal.App.3d 124, 128 [123 Cal.Rptr. 181].)
C. Rules of Statutory Construction
Traditional rules of statutory construction assist us in analyzing the issue presented by this appeal. “ ‘ “ ‘Statutes are to be interpreted in accordance with their apparent purpose ....’■ [Citation.] First and foremost, we look for that purpose in the actual language of the statute. [Citation.] If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. [Citation.] If the meaning of the words is not clear, we may refer to various extrinsic aids, including the history of the statute, to determine the intent of the Legislature. [Citation.]” ’[][]... ‘ “[I]f neither the words of the *Supp. 9 statute nor its legislative history reveal[s] a clear meaning, we apply reason and practicality, and interpret the statute in accord with common sense and justice, and to avoid an absurd result.” ’ ” (Katosh v. Sonoma County Employees’ Retirement Assn. (2008) 163 Cal.App.4th 56, 62-63 [77 Cal.Rptr.3d 324].)
“But the ‘plain meaning’ rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].” (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) .
D. Application of Statutory Construction Rules to This Case
Against this backdrop, we examine the words of not only the disputed exemption statute, i.e., section 704.070, but as well another statute that neither party cited, but which we find forms the foundation for our conclusion that the trial court miscalculated the amount of the exemption: section 700.140.[5] We analyze that uncited statute because it has already answered the question presented, for it uses the phrase “the amount levied upon”—a phrase almost identical to “the paid earnings that are levied upon”—in such a way as to make it beyond dispute that in calculating the 75 percent exemption for wages in a deposit account, the starting point is the balance in the account on the date of the levy.
We begin by examining section 700.140 and its subdivisions because that statute governs levies of execution on deposit accounts. The statute provides, in pertinent part, as follows:
“(a) [T]o levy upon a deposit account, the levying officer shall personally serve a copy of the writ of execution and a notice of levy on the financial *Supp. 10 institution with which the deposit account is maintained .... The execution lien reaches only amounts in the deposit account at the time of service on the financial institution ....
“(c) During the time the execution lien is in effect, the financial institution shall not honor a check or other order for the payment of money drawn against, and shall not pay a withdrawal from, the deposit account that would reduce the deposit account to an amount that is less than the amount levied upon. . . .
“(e) When the amount levied upon pursuant to this section is paid to the levying officer, the execution lien on the deposit account levied upon terminates.” (Italics added).
We note that Ford chose the deposit account levy method of enforcing its judgment from a broad menu of options open to it. Although the phrase “the amount levied upon” is not defined, either statutorily or judicially, its context in section 700.140 makes its meaning clear. The express and unambiguous language of section 700.140 should have served to put Ford on notice regarding the pool of available funds from which the judgment could be satisfied if Ford chose to levy on Waters’s bank account. This statute warns Ford that neither funds that may have been in the account before the levy hit, nor funds that may come into the account after the levy hits, can be used to satisfy the debt. Instead, “[t]he execution lien reaches only amounts in the deposit account at the time of service on the financial institution . . . .” (§ 700.140, subd. (a).) The phrase “the amount levied upon” is simply shorthand for the sum of money that the execution lien has the potential of reaching—i.e., only the balance in the account on the date the levy is served.
We now look at exemptions that might apply when a judgment creditor has executed on a bank account that contains paid earnings. Indisputably, “paid earnings” are one class of exempt property. Section 704.070, the exemption statute the parties ask us to construe, provides in pertinent part as follows:
“(a) As used in this section:
“(1) ‘Earnings withholding order’ means an earnings withholding order under Chapter 5 (commencing with Section 706.010) (Wage Garnishment Law).
“(2) ‘Paid earnings’ means earnings as defined in Section 706.011 that were paid to the employee during the 30-day period ending on the date of the *Supp. 11 levy. For the purposes of this paragraph, where earnings that have been paid to the employee are sought to be subjected to the enforcement of a money judgment other than by a levy, the date of levy is deemed to be the date the earnings were otherwise subjected to the enforcement of the judgment.
“(3) ‘Earnings assignment order for support’ means an earnings assignment order for support as defined in Section 706.011.

“(b) Paid earnings that can be traced into deposit accounts or in the form of cash or its equivalent as provided in Section 703.080 are exempt in the following amounts:

“(1) All of the paid earnings are exempt if prior to payment to the employee they were subject to an earnings withholding order or an earnings assignment order for support.
“(2) Seventy-five percent of the paid earnings that are levied upon or otherwise sought to be subjected to the enforcement of a money judgment are exempt if prior to payment to the employee they were not subject to an earnings withholding order or an earnings assignment order for support.” (Italics added.)
Regarding Waters’s claim of exemption, it is undisputed that virtually all of those funds in the account on the date of the levy fell into the “paid earnings” category, and that none of them had been subjected to an earnings withholding order or an earnings assignment order. Thus, on the date of the levy, Waters had $1,782.63 in “paid earnings” in her bank account.
Contrary to the Ford’s suggestion, the paid earnings subject to execution are not any and all earnings paid over the past 30 days. The phrase “seventy-five percent of the paid earnings that are levied upon” (§ 704.070, subd. (b)(2), italics added) is itself clear and unambiguous, and the exemption calculation is a simple one. After execution on a bank account, the levying officer has in his or her possession a specific and defined amount of “the paid earnings that are levied upon.” All a court granting the claim of exemption need do is ascertain what amount is in the possession of the levying officer, figure out what 75 percent of that sum is, and then make the allocations between the judgment creditor and judgment debtor accordingly.
Moreover, when one reads section 700.140, subdivision (a), the bank levy statute, and section 704.070, the exemption statute, in pari materia, one is led to the conclusion that when the Legislature used the phrase “levied upon” in these two statutes, the phrase was intended to have the same meaning—i.e., the amount that is in the deposit account on the date the levy *Supp. 12 is served on the financial institution. Application of section 700.140, subdivision (a) compels the conclusion that $1,782.63 is the only amount that the execution lien could reach. As such, Ford’s potential recovery was limited to the amount that was in Waters’s account on the date of the levy, not amounts that had been in the account at some previous time. We therefore conclude that the trial court erroneously calculated Waters’s exemption amount.
The sum of $1,782.63 thus being the amount of “paid earnings that are levied upon” Waters was entitled to claim an exemption of 75 percent of that amount, as provided for under section 704.070, subdivision (b)(2).
Acceptance of Ford’s interpretation of section 704.070, subdivision (b)(2) would necessarily render the bank-balance limitation of section 700.140, subdivision (a) nugatory, for it would require us to ignore not only the express language of the latter statute, but also the clear legislative intent and purpose for that method of levy—which is to limit the creditor to the amount in the deposit account on the date of the levy.
Further, ignoring the clear language of these two controlling statutes, and interpreting them in the way urged by Ford, would lead to absurd results. The Legislature clearly intended for a judgment debtor to be able to claim an exemption for 75 percent of paid wages that remain in the bank account on the date a levy is served. Under Ford’s theory, the judgment debtor is automatically deprived of that substantial statutory exemption whenever the bank balance falls below 25 percent of paid wages deposited into the bank account within the past 30 days.
Moreover, under Ford’s theory, the percentage of the exemption would fluctuate depending on the bank balance, and a judgment creditor could in some circumstances end up with 100 percent of “the paid earnings levied upon,” leaving the debtor with no exemption at all. This position finds no statutory support, as the Legislature has unambiguously stated that the judgment debtor is entitled to a 75 percent exemption. Under Waters’s more reasonable theory, the percentage exemption always remains static, consistent with the express language of section 704.070, subdivision (b)(2), to allow the employee to protect 75 percent of any paid earnings levied upon. A few examples serve to illustrate the unreasonableness of Ford’s position:
*Supp. 13 [[Image here]]
Finally, we must decline Ford’s offer to have us engage in a review of the legislative history of this particular exemption statute. Ford asks us to the consider the legislative committee comment for section 704.070: “Section 704.070 is new. Subdivision (b)(1) continues the protection of wages that have already been garnished or subjected to a wage assignment for support for 30 days after they are paid. Subdivision (b)(2) applies an exemption analogous to that provided by Section 706.050 to paid earnings that have not been garnished or subjected to a wage assignment for support in the hands of the employer.” (Legis. Com. com., West’s Ann. Code Civ. Proc. (1987 ed.) foil. § 704.070, p. 325.)
Section 706.050 refers to the federal exemption of a debtor’s wages. “Except as otherwise provided in this chapter, the amount of earnings of a judgment debtor exempt from the levy of an earnings withholding order shall be that amount that may not be withheld from the judgment debtor’s earnings under federal law in Section 1673(a) of Title 15 of the United States Code.” (§ 706.050.)
Title 15 United States Code section 1673, entitled “Restriction on garnishment,” provides in part:
“(a) Maximum allowable garnishment [f] Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the *Supp. 14 aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
“(1) 25 per centum of his disposable earnings for that week, or
“(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage . . . .” (15 U.S.C. § 1673(a), italics added.)
Ford argues that under its theory, Waters is placed in the same position she would have been in had the wages been garnished directly from the employer, and argues that such an outcome is consistent with legislative intent. This argument is unpersuasive.
First, it should be noted that the federal statute’s 25 percent limit on the amount a judgment creditor may garnish from wages is simply an alternate way of stating the 75 percent exemption that the judgment debtor is entitled to under the state statute. Second, a wage garnishment would have initially been aimed at a specific paycheck to which the claim of exemption would have applied, just as a bank levy is aimed at the specific balance in the account on the date of the levy. The date of service starts the exemption clock running. In other words, had Ford served an earnings withholding order on June 21, instead of a bank levy, it would not have been able to have that earnings withholding order apply to any paychecks Waters had received and cashed before June 21. It would only have been that particular check, and future wages, of which Ford would have been entitled to receive a maximum of 25 percent. Our interpretation thus puts both Ford and Waters in the same position they each would have been in had Ford sought to garnish Waters’s wages.
Similarly, Ford argues that if we read section 704.070, subdivision (b)(1) and (2) of the exemption statute as complementary of each other, we would conclude that the Legislature intended to put Waters in the same position as she would have been in had Ford garnished her wages. Ford argues that subdivision (b)(1) provides for a complete exemption if the wages deposited had already been subjected to a wage garnishment, and subdivision (b)(2) gives the judgment creditor what it could have gotten had it garnished the wages directly from the employer. As with its previous argument, Ford ignores the fact that it would not have been able to garnish any wages paid to the debtor for any period before the wage garnishment request was served.
Perhaps more important for our analysis, the legislative committee comment actually supports Waters’s position, for it allows her to claim the same percentage exemption to wages that have been deposited into her bank account as she would have been able to claim had Ford served the earnings *Supp. 15 withholding order for a particular paycheck, that is, 75 percent. The legislative committee comment clearly expresses this legislative intent, and it comports with the public policy, expressed in the exemption statutes, of allowing a judgment debtor to retain funds to take care of basic necessaries of life, and to have something to live on until the next paycheck. The comment also assists us in construing the exemption statutes to the benefit of the judgment debtor. (Schwartzman v. Wilshinsky, supra, 50 Cal.App.4th at p. 630 [interpreting exemption statutes relating to individual retirement and “401(k)” accounts]; Lampley v. Alvares, supra, 50 Cal.App.3d at p. 128.)
Finally, Ford suggests that if we adopt Waters’s argument, we would reward a judgment debtor who may have withdrawn funds from the deposit account before the date of the levy and spent them on luxuries or other frivolities. There is nothing to suggest that the Legislature did not consider this possibility when it enacted section 700.140 and limited the reach of the execution lien on a bank account to “only amounts in the deposit account at the time of service on the financial institution” {id., subd. (a)), and when it enacted section 704.070 and created an exemption for 75 percent of “the paid earnings that are levied upon.” Surely it occurred to members of the legislative branch the reasonable and obvious possibility that judgment debtors may make withdrawals to pay utility and other bills, buy food, and perhaps even splurge on luxury items before a levy on a deposit account is served. If Ford believes that, despite the express statutory limitations, judgment creditors should be able to access a debtor’s funds retroactively when they seek to levy on a bank account, then Ford must look to the Legislature for a fix. Our role, as the judicial branch of government, is simply to interpret the controlling statutes as they are written.
IV. CONCLUSION
When the judgment creditor chooses a levy on a bank account, it can look to recover from only those sums in the deposit account on the date the levy hits, i.e., “the amount levied upon.” (§ 700.140, subds. (c), (e), italics added.) The judgment creditor cannot lay claim to funds that previously may have been in the deposit account—even as recently as the day before. Instead, as the bank account levy statute clearly provides, the lien reaches only amounts in the account at the time the lien is served. {Ibid.)
The exemption statute provides a debtor with an exemption for 75 percent of “the paid earnings that are levied upon.” (§ 704.070, subd. (b)(2), italics added.) Because what is “levied upon” is the balance that exists on the date of the levy, the exemption applies to that amount.
*Supp. 16 V. DISPOSITION
The judgment is reversed and the matter is remanded to the trial court for entry of an order granting Waters’s claim of exemption in the amount that represents 75 percent of the qualifying paid earnings in her account on the date of the levy.
Hunter, J., and Vilardi, J., concurred.

 All dates are for the year 2007 unless otherwise stated.

 The procedure for claiming an exemption after levy is set forth in Code of Civil Procedure section 703.510 et seq. Although it appears that Waters may not have initially entirely complied with those procedures, her omissions are not at issue in this appeal.

 There was a fourth direct payroll deposit in June for $95.27, but since this was after the date of levy, it is not relevant to the resolution of the issue presented here.

 All further statutory references are to the Code of Civil Procedure unless otherwise noted.

 We note that neither party referred the trial court to section 700.140, subdivision (a). Had they done so, we are confident the trial court would have arrived at the same conclusion that we have. We also note that even on appeal, both sides apparently remain blissfully unaware of the existence of this statute.