FILED

DEC 14 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP Nos. SC-12-1209-JuMkPa |
| | SC-12-1217-JuMkPa |
| JOSE J. HERNANDEZ, | (consolidated appeals) |
| | |
| Debtor. | Bk. No. 11-15921 |
| | |
| COLLECT ACCESS LLC, | |
| | |
| Appellant, | |
| v. | O P I N I O N |
| | |
| JOSE J. HERNANDEZ, | |
| | |
| Appellee. | |

Argued and Submitted on November 15, 2012
at Pasadena, California

Filed - December 14, 2012

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret M. Mann, Bankruptcy Judge, Presiding

_____

Appearance:     Tappan Zee, Esq., Zee Law Group, P.C. argued for appellant Collect Access LLC.  Jorge Halperin, Esq. and Elizabeth P. Swiller, Esq., submitted on brief for appellee Jose J. Hernandez.

_____

Before:  JURY, MARKELL, and PAPPAS Bankruptcy Judges.

JURY, Bankruptcy Judge:

Appellant-creditor, Collect Access LLC (Collect), levied on funds in chapter 7[1] debtor's deposit account in the amount of $712.39. Twenty days later, debtor filed his bankruptcy petition and claimed the funds exempt. Debtor sought an ex parte turnover order requiring Collect to surrender the funds. The bankruptcy court found that debtor had an interest in the funds despite the levy and ordered turnover. Collect moved to vacate the turnover order which the bankruptcy court denied. Collect appeals from that order.[2]

For the reasons stated, we AFFIRM the bankruptcy court's result, but we rely on different grounds.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] The bankruptcy court treated Collect's motion to vacate as a timely motion for reconsideration under Rule 9023, which tolled the time to appeal the original order. Accordingly, we have jurisdiction to review both the underlying order and the order denying reconsideration. Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94, 99 (9th Cir. BAP 2006). Further, Collect's Notice of Appeal (NOA) designates only the order denying its motion to vacate and does not attach the underlying turnover order. Rule 8001(a) does not require the NOA to designate the order or judgment from which an appeal is taken, but our local rule, 9th Cir. BAP Rule 8001(a)-1, does. We may depart from our local rule absent prejudice. In re JSJF Corp., 344 B.R. at 100. There is no prejudice here as the parties have briefed the issues with respect to the turnover order. We thus review the turnover order.

-2-

## I. FACTS

On August 30, 2002, the California state court entered a judgment in favor of First Select, Inc. (First Select) and against Jose J. Hernandez, the debtor in this case.

On January 22, 2008, First Select recorded an abstract of judgment for the sum of $2,091.71 in the County of San Diego.

On May 19, 2008, First Select renewed the judgment for the sum of $3,723.19.

On July 12, 2011, apparently as a successor to First Select,[3] Collect submitted a writ of execution to the Los Angeles County Sheriff's Department (Sheriff).  On August 26, 2011, the writ was served on Wells Fargo Bank (Bank).  On September 7, 2011, the Sheriff received from the Bank $712.39 that was in debtor's deposit account.

On September 27, 2011, debtor filed his bankruptcy petition.  At the time of his filing, the levied funds were in the Sheriff's possession.  Debtor claimed the funds exempt under Cal. Civ. Proc. Code (CCP) § 703.140(b)(5).[4]

On October 29, 2011, the chapter 7 trustee filed her report of no distribution.

---

[3] The standing of Collect to pursue execution on the judgment has not been challenged.

[4] CCP § 703.140(b)(5) is referred to as the "wild card" exemption because it can be used to protect any kind of property. Goswami v. MTC Distrib. (In re Goswami), 304 B.R. 386, 390 (9th Cir. BAP 2003).  The wild card exemption allows debtors to exempt up to $925, along with any unused portion of the $17,425 exemption amount under CCP § 703.140(b)(1).

-3-

On November 3, 2011, debtor filed an ex parte motion for turnover of the funds under § 542, contending they were property of his estate, had been exempted, and therefore belonged to him. The next day the bankruptcy court entered an order requiring the Sheriff to turn over $712.39 to debtor (Turnover Order I).

On November 7, 2011, before receiving the order, the Sheriff transferred the funds to Zee Law Group (Zee), the attorney for Collect.

On November 11, 2011, debtor sought ex parte a second turnover order, this time directed at Zee. The bankruptcy court granted debtor's request by order entered on November 30, 2011 (Turnover Order II).

On December 1, 2011, Collect filed an opposition to debtor's turnover request. First, relying on the holding in Del Riccio v. Super. Ct. of L.A. Cnty., 115 Cal.App. 2d 29, 31 (Cal. Ct. App. 1952), Collect argued that the funds were no longer property of debtor or his estate because ownership of the funds passed from debtor to the judgment creditor once the Sheriff received the funds. Second, Collect maintained that the chapter 7 trustee neither asserted a preference claim nor sought to recover the levied funds. Third and last, Collect argued that debtor had waived his claim of exemption against the funds because he did not timely assert it. Six days later, Collect filed an ex parte application to quash Turnover Order II (Motion to Vacate).

-4-

Debtor responded to Collect's opposition, this time alleging that he had the right to recover the funds under § 522(g) and (h) rather than § 542. Debtor maintained that he listed the levied funds in Schedule B and claimed them exempt in Schedule C, the trustee filed a report of no distribution thereby abandoning the asset and, as a result, debtor could seek to recover the funds. Debtor further argued that the levy constituted a preference under § 547. He also maintained that he did not waive his exemption in the funds, because he claimed them exempt under CCP § 703.140(b)(5) when he filed his petition. Finally, debtor alleged that Collect violated the automatic stay by continually refusing to turn over the funds and requested $1,100 in attorneys' fees.

On January 17, 2012, the bankruptcy court issued a tentative ruling indicating its reasons for entering the turnover orders. The court explained that under CCP § 697.710, a levy on property under a writ of execution creates a lien on the property from the time of the levy until the expiration of two years after the date of issuance of the writ unless the judgment is sooner satisfied. The court reasoned that because Collect's execution lien was unsatisfied on the date of debtor's bankruptcy filing, the funds remained part of debtor's estate under the holdings in United States v. Whiting Pools, Inc., 462 U.S. 198, 207, 76 L.Ed. 2d 515, 103 S.Ct. 2309 (1983) and Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 591 (9th Cir. BAP 1995). In the end, the bankruptcy court opined that debtor

-5-

may be eligible to recover actual fees and costs associated with his two motions seeking a turnover order.

On January 19, 2012, the bankruptcy court heard oral argument from the parties and took the matter under submission.

On March 19, 2012, the bankruptcy court entered a Memorandum of Decision which essentially adopted its earlier tentative ruling. See In re Hernandez, 468 B.R. 396 (Bankr. S.D. Cal. 2012).

On April 3, 2012, the bankruptcy court entered the order denying Collect's Motion to Vacate Turnover Order II. On April 9, 2012, Collect timely appealed.[5]

Meanwhile, on April 4, 2012, debtor filed a motion for costs, damages and fees. On April 26, 2012, debtor filed a motion to avoid Collect's lien under § 522(f) and a motion for contempt.

On June 14, 2012, the bankruptcy court heard the three motions. The court (1) granted debtor's motion to avoid Collect's lien; (2) denied his motion for contempt because Collect had complied with Turnover Order II by that time, and (3) granted debtor's motion for costs, damages and fees,

[5] This appeal was transmitted to the Panel and assigned BAP No. SC-12-1209. On April 18, 2012, Collect filed a second NOA which was also transmitted to the Panel and assigned BAP No. SC-12-1217. A notice of Deficient Appeal and Impending Dismissal (NOD) was issued in this later appeal, since it appeared untimely. On May 23, 2012, this Panel determined that the NOD was satisfied and that appellant had filed a timely NOA. Since Collect's NOAs were identical and requested review of the same set of orders, the Panel entered an order consolidating the appeals on the same date.

-6-

awarding debtor $3,572.06 in actual damages and $1,000 in punitive damages for Collect's failure to turn the funds over to debtor pursuant to the court's orders.

On June 19, 2012, the bankruptcy court entered the order awarding the fees and damages.

On June 20, 2012, debtor filed a motion to dismiss this appeal as moot on the grounds that Collect complied with Turnover Order II and its lien was avoided under § 522(f). On July 25, 2012, the Panel issued an order denying debtor's motion to dismiss the appeal as moot, but authorized the parties to further address the issue in their briefs. We discuss the mootness issue below.

## II.   JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (E). We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUES

A.   Whether this appeal is moot;

B.   Whether the bankruptcy court erred in finding that the levied funds held by the Sheriff were property of debtor's estate subject to turnover;

C.   Whether the bankruptcy court erred in denying Collect's Motion to Vacate Turnover Order II; and

D.   Whether the bankruptcy court erred by granting debtor's ex parte motion for turnover of the funds without an adversary proceeding.

-7-

## IV. STANDARDS OF REVIEW

Whether an appeal is moot and whether property is property of the estate are questions of law we review de novo. See Menk v. Lapaglia (In re Menk), 241 B.R. 896, 903 (9th Cir. BAP 1999); Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010). We also review de novo the bankruptcy court's conclusions of law, including statutory interpretations. DeMassa v. MacIntyre (In re MacIntyre), 74 F.3d 186, 187 (9th Cir. 1996).

A bankruptcy court's denial of a motion for reconsideration is reviewed for abuse of discretion. First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

Whether an adversary proceeding was required is an issue that requires us to interpret and apply Rule 7001, which is a matter for de novo review. Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 550 (9th Cir. BAP 2002).

We may affirm on any ground supported by the record. Siriani v. Nw. Nat'l Ins. Co. (In re Siriani), 967 F.2d 302, 304

(9th Cir. 1992).

## V. DISCUSSION

### A. Mootness

Before reaching the merits, we consider debtor's mootness argument. An appeal is constitutionally moot when events occur during the pendency of the appeal that make it impossible for the appellate court to grant effective relief. Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008). Debtor contends that the following events render this appeal moot: (1) the funds are now in the hands of the debtor; (2) the lien which gave rise to Collect's claim has been avoided; and (3) the underlying debt has been discharged. Under these circumstances, debtor argues, effective relief is no longer available. On the other hand, Collect maintains that if the Panel reverses the bankruptcy court and finds that debtor's interest in the funds was extinguished after the levy, we can order debtor to return the funds to Collect. Collect further argues that it would not have been a violation of the automatic stay for Collect to retain the funds postpetition if, under California law, ownership of the funds passed from debtor to the judgment creditor once the Bank released the funds to the Sheriff. On these grounds, Collect contends effective relief is available.

Debtor, as the party arguing for dismissal based on mootness, "has the heavy burden of establishing that there is no effective relief remaining for a court to provide." Suter v.

-9-

Goedert, 504 F.3d 982, 986 (9th Cir. 2007). Debtor has not met his burden here. Where the order appealed involves the distribution of money and the party who received the funds is a party to the appeal, the appeal is not moot because we have the power to fashion effective relief by ordering the party to return the money. See Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1007 (9th Cir. 1993). Under this rule, we can implement effective relief because debtor is a party to the appeal, and we can order him to repay the money to Collect upon reversal of the bankruptcy court's ruling. Debtor's discharge also would not impact the return of the funds to Collect. If debtor had no interest in the funds after the levy, they would have been rightfully in the Sheriff's possession. In addition, under these facts, no stay violation would have occurred. Accordingly, we conclude that the appeal is not moot.

**B.    Property of the Estate**

A bankruptcy court may order turnover of property to the debtor's estate if, among other things, such property is considered "property of the estate." See §§ 541(a) (defining property of the estate), 542(a) (authorizing turnover of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title). Section 541(a) provides that property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. The primary question on appeal is whether the prepetition levied

-10-

funds in the hands of the Sheriff on the petition date were in fact property of debtor's bankruptcy estate. We hold that they were.

Whether a debtor's interest constitutes "'property of the estate' is a federal question to be decided by federal law." McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1078 (9th Cir. 2000). However, the nature and extent of the debtor's interest in property must be determined by nonbankruptcy law. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (citing Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). California law applies to this case.

California statutory law governs generally the rights and obligations of debtors and creditors with respect to the enforcement of money judgments. In examining the statutory scheme, the bankruptcy court first found that the Sheriff's levy under Collect's writ of execution resulted in an execution lien, rather than a transfer of the ownership of the funds. In re Hernandez, 468 B.R. at 402; see also CCP § 697.710 ("A levy on property under a writ of execution creates an execution lien on the property from the time of levy . . . ."). Next, the court found that before the execution lien could be transformed into ownership of the funds, the Sheriff had to release the funds to the judgment creditor. Id. In reaching this conclusion, the court relied on CCP §§ 697.710 and 724.010(b). Under CCP

-11-

§ 697.710, entitled "Creation and Duration of Execution Lien", an execution lien created by levy "survives for the earlier of two years, or when the judgment is satisfied." Id. Under CCP § 724.010(b),[6] the court reasoned, the judgment is not fully satisfied until the creditor receives the levied funds from the levying officer and files an acknowledgment of satisfaction. On this basis, the bankruptcy court concluded that since the Sheriff still held the funds when debtor filed his petition, Collect only held a lien on the funds because the second step of satisfaction had not yet occurred. Id. at 402-03.

The bankruptcy court's analysis relies on the incorrect statutory scheme. The California legislature has enacted a "comprehensive and precisely detailed scheme governing enforcement of money judgments." Ford Motor Credit Co. v. Waters, 166 Cal.App.4th Supp. 1, 7 (Cal. App. Dep't Super. Ct. 2008). In CCP §§ 700.010-700.200, "the judgment creditor is advised of all methods of levy available to enforce a money judgment. Those statutes tell the judgment creditor and levying officer how to levy on assets . . . , as here relevant, bank accounts." Id.

CCP § 700.140 entitled "Deposit accounts" provides in relevant part:

---

[6] This subsection provides: "Where a money judgment is satisfied by levy, the obligation of the judgment creditor to give or file an acknowledgment of satisfaction arises only when the judgment creditor has received the full amount required to satisfy the judgment from the levying officer."

-12-

(a) [T]o levy upon a deposit account, the levying officer shall personally serve a copy of the writ of execution and a notice of levy on the financial institution with which the deposit account is maintained . . . . The execution lien reaches only amounts in the deposit account at the time of service on the financial institution, including any item in the deposit account that is in the process of being collected, unless the item is returned unpaid to the financial institution.

. . .

(e) When the amount levied upon pursuant to this section is paid to the levying officer, the execution lien on the deposit account levied upon terminates.

Under the plain language of CCP § 700.140, Collect obtained an execution lien on the amounts in the deposit account at the time of the service on the financial institution. These amounts were not available for debtor's use. The lien was terminated under subsection (e) at the time the funds were paid to the levying officer. The termination of Collect's execution lien occurred well before debtor's bankruptcy. Given this statutory framework that applies to deposit accounts, the bankruptcy court's reliance on CCP §§ 697.710 and 724.010(b) for its analysis was misplaced.

Nonetheless, we do not think the plain language of CCP § 700.140 provides an answer to the ownership question Collect raises on appeal. Although the statute suggests that debtor's interest in the funds was transferred when the funds were paid to the levying officer and the lien terminated, the statute does not plainly say so. Compare In re Ramirez, 183 B.R. at 589 (noting that although relevant California statute stated when levy was complete, it did not state that a completed levy transferred ownership of the property).

-13-

Collect relies on Del Riccio, 115 Cal.App.2d 29, to support its position that the transfer of funds to the Sheriff extinguished all rights that debtor had in the property prepetition. Although Collect urges the Panel to rely on Del Riccio to adopt a bright line rule, we decline to read the case so broadly. In Del Riccio, after a judgment was obtained, a writ of execution was issued and levied upon a bank in which the defendant had the sum of $6,426.66. While the sheriff had the money in his possession, defendant applied for and obtained a court order prohibiting the sheriff from paying any money to the plaintiffs. The plaintiffs moved to vacate the order which the court denied. The defendant then moved for an order staying execution upon posting a cash undertaking in the action. After defendant posted a satisfactory bond, the court made a further order staying the execution. Plaintiffs appealed.

The California Court of Appeal found that the trial court had the power to impose a stay of execution, but had no power to undo what had already been done so as to deprive the creditor of ownership and use of the money collected under the writ. The appellate court discussed the parties' interest held in money in levy as follows:

> When the writ has been regularly issued and executed, money collected, while in the hands of the officer, is property of the judgment creditors and not the debtor. Nothing can be done with it other than to turn it over to the creditor. The possession of the officer solely for the use and benefit of the creditor is possession by the latter . . . . Correspondingly, when the debtor's money is taken on a valid execution it ceases to be his and he immediately becomes entitled to partial or full satisfaction of the judgment.

Del Riccio has not been overruled, but the rule of law it

-14-

established is not a complete answer to the bankruptcy issue before us. Although Del Riccio does say that money collected while in the hands of the Sheriff is the property of the judgment creditor, the decision discussed only the trial court's power with respect to a valid execution. The court had no reason to examine the various statutory rights and obligations of the judgment creditor vis-a-vis the debtor after the execution. Therefore, we do not read Del Riccio as stating a per se rule that the levying officer's possession of money after a valid execution accomplishes a complete transfer of ownership of the property, without limitation, and in disregard of other statutes in the enforcement of money judgment scheme.

The bankruptcy court's analysis in In re Caldwell, 111 B.R. 836 (Bankr. C.D. Cal. 1990), sheds further light on the property of the estate analysis. There, the bankruptcy court partially relied on Del Riccio in analyzing the conflicting claims of the debtors and the State Board of Equalization in funds held by a bank. Under Cal. Rev. & Tax Code § 6703, a notice of levy was the equivalent of a levy. The Caldwell court found that "[a] levy transfers ownership in property. This usually takes place when a law enforcement officer seizes the property." Id. at 838. Citing Del Riccio, the bankruptcy court noted that under Cal. Rev. & Tax Code § 6703, the bank in effect became the executing officer for the benefit of the Board.[7] Id.

---

[7] See also McCaffey Canning Co. v. Bank of Am., 109 Cal. App. 415, 423-24 (Cal. Ct. App. 1930) ("While the property was in the custody of the sheriff, it was constructively in the possession of plaintiff through the sheriff as his agent.").

-15-

Accordingly, the court concluded that under California law, the Board's notice of levy (which was the equivalent of a levy) extinguished the debtors' property interest in the funds. "In other words, the Notice of Levy transferred ownership of the Funds from debtors to the Board." Id. Finally, because the debtors had no right of redemption under Cal. Rev. & Tax Code § 6703, the court observed that "a levy under [this statute] terminates any and all interests a debtor may have in the property." Id. at n.2.

If anything, Caldwell's analysis instructs us to delve further into whether the effect of the levy was to divest debtor of all interests in the property seized for purposes of a property of the estate analysis.[8] Use of the term "ownership" to identify the interests of the parties does not help because the term is not defined. The Bankruptcy Code does not define property, ownership, or owner; however, dictionary definitions provide guidance. Property is defined as "[t]he right to possess, use, and enjoy a determinate thing . . .; the right of

_____

[8] Here, just as in Caldwell, debtor had no redemption rights with respect to the funds. Likewise, although the bankruptcy court partially relied on Whiting Pools for its decision, debtor had none of the interests which were identified by the Supreme Court in Whiting Pools as interests sufficient to consider the seized property part of the debtor's estate. There, the IRS's levy was on tangible property that was subject to the requirements of a statutory tax sale which provided the debtor with notice rights, redemption rights, and rights to the surplus from the sale. 462 U.S. at 211. Thus, although Whiting Pools provides a summary of the law in the turnover/property of the estate analysis, its facts are distinguishable from those here. Whiting Pools is also distinguishable in that it was a debtor-in-possession in a reorganization that sought turnover. As discussed below, a chapter 7 debtor generally does not have standing to seek a turnover order under § 542.

-16-

ownership . . . . Also termed bundle of rights." <u>Black's Law Dictionary</u> 1335 (9th ed. 2009). Ownership is defined as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others. . . ." <u>Id.</u> at 1215. An owner is "[o]ne who has the right to possess, use, and convey something; a person in whom one or more interests are vested." <u>Id.</u> at 1214. Taken together, these definitions demonstrate that a debtor's "bundle of rights" in property must be identified on a case-by-case basis.

It appears from the bankruptcy court's findings of fact that virtually all of the funds in debtor's account on the day of the levy consisted of social security benefits.[9] The bankruptcy court found that debtor's only source of income other than $100 of family contributions was $636 in monthly social security benefits. <u>In re Hernandez</u>, 468 B.R. at 404. Collect does not dispute this finding on appeal.[10]

---

[9] The Code of Federal Regulations (CFR), which govern state and federal financial institutions, sets forth rules regarding social security benefits in a debtor's deposit account. "State and federal financial institutions must, before complying with a creditor's garnishment order, determine whether certain exempt federal benefits (e.g., social security, supplemental security income, etc.; see 31 CFR § 212.2(b)) have been electronically deposited into the debtor's account within the preceding two months and, if so, protect whatever amount was deposited during that period. In short, banks may not freeze the entire account and the debtor retains access to the exempt funds. [See 31 CFR § 212.1 et seq.; see also 31 CFR § 212.3 (definitions)]." Hon. Alan M. Ahart, <u>Cal. Prac. Guide: Enforcing Judgments and Debts</u> § 6:560.10 (2012). It is not apparent from the record whether these regulations were followed in this case and, therefore, whether the execution here was valid.

[10] CCP § 703.080 provides:

(continued...)

-17-

Under California law, government benefits such as social security are intended exclusively for the benefit and support of qualified recipients. These funds are exempt and cannot be subject to collection. See Kruger v. Wells Fargo Bank, 521 P.2d 441, 458-60 (Cal. 1974).[11] Under CCP § 704.080(b), social security benefits in deposit accounts are exempt in the amount of $2,425 and the exemption is automatic. The debtor need not make a claim and thus there could be no transfer of ownership in the funds by waiver or by operation of law. See CCP

---

[10](...continued)
(a) Subject to any limitation provided in the particular exemption, a fund that is exempt remains exempt to the extent that it can be traced into deposit accounts or in the form of cash or its equivalent.

(b) The exemption claimant has the burden of tracing an exempt fund.

(c) The tracing of exempt funds in a deposit account shall be by application of the lowest intermediate balance principle unless the exemption claimant or the judgment creditor shows that some other method of tracing would better serve the interests of justice and equity under the circumstances of the case.

Collect raised no issue in the bankruptcy court regarding debtor's burden of tracing his exempt social security benefits which were made into his deposit account. Consequently, any tracing issue is waived on appeal. Campbell v. Verizon Wireless S-CA (In re Campbell), 336 B.R. 430, 434 n.6 (9th Cir. BAP 2005) (citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989) ("The rule in this circuit is that appellate courts will not consider arguments that are not 'properly raise[d]' in the trial courts.").

[11] Federal statutes also provide that social security and supplemental security income benefits (whether paid or payable) ordinarily are not subject to execution, levy, attachment, garnishment or other legal process; or to the operation of bankruptcy laws. See 42 U.S.C. §§ 407, 1382(d).

-18-

§ 703.030(b).[12] "'Some exemptions need not be claimed. They are automatic and are denoted by the statutory terms of art 'exempt without making a claim,' which has the effect of eliminating the applicability of the procedure for enforcing a money judgment.'" In re Hernandez, 468 B.R. at 404 (citing In re Petruzzelli, 139 B.R. 241, 243 (Bankr. E.D. Cal. 1992)). One treatise further explains:

> Theoretically, a claim of exemption should never have to be filed for property 'exempt without making a claim.' In practice, however, if such property is levied upon by the judgment creditor, a claim of exemption may have to be filed to obtain its release—unless the creditor can be persuaded to order it released. [CCP § 703.510(b)] (But so long as no sale has occurred, the levying officer should release the property whether or not the exemption filing is timely.).

Hon. Alan M. Ahart, Cal. Prac. Guide: Enforcing Judgments and Debts § 6:870 (2012).

Exemptions under California law are wholly statutory and cannot be enlarged [or diminished] by the courts. Ford Motor Credit Co., 166 Cal. App. 4th Supp. at *8. Furthermore, "the exemption laws are designed to facilitate the debtor's financial rehabilitation and have the effect of shifting social welfare costs from the community to judgment creditors. Consequently, the exemption statutes should be construed, so far as

---

[12] CCP § 703.030(b) provides:

Except as otherwise specifically provided by statute, property that is described in this chapter or in any other statute as exempt without making a claim is not subject to any procedure for enforcement of a money judgment.

practicable, to the benefit of the judgment debtor." Id. at *9. California's exemption philosophy is echoed in bankruptcy law.

Because debtor had an exempt property interest in the funds, we conclude that Collect's levy did not operate to extinguish those interests. See In re Hernandez, 468 B.R. at 404 (debtor's exemption rights in the funds had not been terminated prepetition). To adopt Collect's argument for a bright line ownership rule under these circumstances would render the automatic exemption for social security benefits meaningless and allow creditors to levy on exempt funds that they are not entitled to under both state and federal law. In short, debtor had grounds to recover the exempt funds and could have challenged the levy in the state court prepetition on that basis.[13]

As property in which debtor held a legal or equitable interest when his petition was filed, the bankruptcy court's conclusion that the funds in question constituted property of the estate was correct. See In re Varney, 449 B.R. 411 (Bankr. D. Idaho 2011) (even potentially exempt assets nonetheless become property of the estate upon the commencement of the bankruptcy case); In re McAlister, 56 B.R. 164, 166 (Bankr. D. Or. 1985) (even exempt property must initially be regarded as property of the estate and then claimed and distributed as exempt).

---

[13] Even if the ten-day rule to claim an exemption did apply to some or all of the funds, the state court had authority "to relieve a person upon such terms as may be just from failure to claim an exemption within the time and in the manner prescribed in the applicable enforcement procedure." CCP § 703.030(c).

-20-

Although we conclude that the funds were property of debtor's estate, we note a procedural irregularity with debtor's motion for a turnover order under § 542. Section 542(a) enables the bankruptcy trustee, or the debtor-in-possession in a reorganization case to seek turnover of the debtors' assets, for the benefit of the estate. Indeed, in <u>Whiting Pools</u>, it was the debtor-in-possession in a reorganization case that sought turnover. Under the statute, a chapter 7 debtor is not mentioned and generally has no standing to bring an action for turnover. <u>See</u> <u>In re Freeman</u>, 331 B.R. 327, 329 (Bankr. N.D. Ohio 2005) (the general provision in the Bankruptcy Code governing turnover, confers this right upon the trustee); <u>Price v. Gaslowitz (In re Price)</u>, 173 B.R. 434, 440 (Bankr. N.D. Ga. 1994) (turnover action is one facet of a chapter 7 trustee's general duties under § 704(1)).

The procedural irregularity was remedied however by debtor's response to Collect's opposition. The ultimate relief that debtor sought was to preserve his exemption in the levied funds by invoking § 522(g) and/or by exercising the trustee's avoiding powers under § 522(h).[14] Moreover, as of the

---

[14] Sections (g) and (h) provide:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--

(1)(A) such transfer was not a voluntary transfer of
(continued...)

commencement of the case, the automatic stay under § 362(a) arises, which enjoins any and all collection efforts against the debtor. As an enforcement mechanism, a debtor is afforded a private right of action to seek redress under § 362(k)(1). "Section 522's right to claim exemptions in property of the estate bestows standing on debtors for purposes of § 362(k)(1)." In re Mwangi, 432 B.R. at 822. Therefore, debtor's statutory standing to seek the return of the funds levied upon was conferred by statutes other than § 542(a). Further, debtor's procedural irregularity did not in any way affect the bankruptcy court's ability to enter an order that required Collect to surrender the funds to debtor. Since this is a protection of exemption case rather than one for turnover, the bankruptcy

---

[14](...continued)
such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

Eventually, debtor did avoid the lien under § 522(f).

court had the authority to enter an order requiring Collect to surrender the funds to debtor under § 105(a). See § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). Once the property came into the estate, it revested in debtor when his exemption claim went unchallenged. See In re Mwangi, 432 B.R. at 821 (noting that "[p]roperty claimed as exempt leaves the estate and revests in the debtor."). Finally, debtor's ex parte motion seeking the return of his exempt funds was a contested matter under Rule 9014 requiring reasonable notice and opportunity for a hearing. No adversary proceeding was required under Rule 7001. Here, Collect had ample opportunity to contest Turnover Order II through written opposition and oral argument at the eventual hearing on its Motion to Vacate. That said, Collect does not contend on appeal that it was prejudiced in any way by the procedure used.

## VI.   CONCLUSION

Accordingly, we AFFIRM the bankruptcy court's order, albeit for different reasons, and hold that the prepetition levied funds in the hands of the Sheriff on the petition date were property of debtor's estate under § 541(a) due to debtor's exemption rights in the funds. Therefore, the bankruptcy court properly ordered Collect to surrender the funds.