**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: )<br>)<br>ROBERT FERRANTE, )<br>)<br>Debtor. )<br>_____ )<br>)<br>ROBERT A. FERRANTE; RICHARD C. )<br>SHINN, Trustee of the 518 )<br>Harbor Island Drive Trust; )<br>ARMANI FERRANTE; GIANNI )<br>FERRANTE; CHANEL FERRANTE, )<br>)<br>Appellants, )<br>)<br>v. )<br>)<br>THOMAS H. CASEY, Chapter 7 )<br>Trustee; STEVEN FENZL; MARIA )<br>FERRANTE aka MIA FERRANTE, )<br>)<br>Appellees. )<br>_____ ) | BAP Nos. CC-14-1222-KiTaPa<br>CC-14-1223-KiTaPa<br>(Related Appeals)<br><br>Bk. No. 8:10-10310-TA<br><br>Adv. No. 8:12-01330-TA<br><br><br><br><br><br><br><br>**M E M O R A N D U M**[1] |

Argued and Submitted on March 19, 2015
at Pasadena, California

Filed - August 26, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

Appearances:    Arash Shirdel of Pacific Premier Law Group argued
for appellants Robert A. Ferrante and Richard C.
Shinn, Trustee of the 518 Harbor Island Trust;
Owen Kaye of Law Office of Givner & Kaye argued for

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8024-1.

appellants Armani Ferrante, Chanel Ferrante and Gianni Ferrante; and Thomas A. Vogele of Thomas Vogele & Associates, APC argued for appellee Thomas H. Casey, Chapter 7 Trustee.

Before:  KIRSCHER, TAYLOR and PAPPAS, Bankruptcy Judges.

Appellants, chapter 7[2] debtor Robert Ferrante ("Debtor"), his three children Chanel Ferrante, Gianni Ferrante and Armani Ferrante ("Ferrante Children") and Richard C. Shinn ("Shinn"), as trustee of the 518 Harbor Island Drive Trust agreement ("518 Trust")(collectively "Appellants") appeal an order granting partial summary adjudication to the chapter 7 trustee, Thomas H. Casey ("Trustee"), determining the revocability of a qualified personal residence trust as a matter of law by a trustee in bankruptcy or, alternatively, the revocability of the 518 Trust for its failure to comply with IRS regulations.  Appellants also appeal the order denying reconsideration of partial summary adjudication in favor of Trustee on these issues.  We conclude that the 518 Trust terminated pursuant to provisions in the law and express terms in the 518 Trust.  We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.   Prepetition events**

**1.   Qualified Personal Residence Trust**

A brief explanation of a qualified personal residence trust or "QPRT" assists us in gaining a better understanding of the issues in these related appeals.

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

A QPRT, as a creation of statute and IRS regulation, provides a tax savings mechanism through which, for example, a parent may transfer a residence to a child at a dramatically reduced estate and gift tax cost. A QPRT is an effective estate planning technique to transfer a personal residence at a reduced gift and estate tax cost from one generation to another. Jon D. Lallo, Qualified Personal Residence Trusts: An Estate Planning Fad Gone Bad?, 46 R.I.B.J. 17 (Jan. 1998). With a QPRT, the grantor or "term holder" transfers (gifts) a residence to the QPRT and retains the right to live in and use the residence for a specified term of years ("QPRT Term"), usually five to twenty years. During the QPRT Term, the property is held for the sole benefit of the grantor; the grantor has full use of the property and is responsible for all expenses associated with it. With minor exceptions, including working capital to maintain the residence and pay trust expenses, no other property can be contributed to a QPRT. Treas. Reg. § 25.2702-5(c)(5)(ii) (as amended in 1997).

At the end of the QPRT Term, the trust terminates and the assets are distributed to the grantor's beneficiaries without any further gift or estate tax consequences. Thus, any appreciation in the residence's value after it is transferred to the QPRT avoids estate or gift tax and inures to the benefit of the remainder beneficiaries. If the grantor dies before the end of the QPRT Term, the assets revert to the grantor's estate and are subject to estate tax. Treas. Reg. § 20.2036-1(a).

A compliant QPRT has very specific features and requirements. For example, a QPRT must be irrevocable, a transfer of real property to a QPRT must be a completed gift, and a QPRT grantor

-3-

must retain certain rights therein, including the right to live in the QPRT property rent free for the QPRT Term and the right to income from the property.  The governing instrument of the QPRT must also provide that:

- any income of the trust be distributed to the term holder at least annually (Treas. Reg. § 25.2702-5(c)(3) (1992));
- the trustee may not distribute trust principal to any beneficiary other than the term holder until the expiration of the QPRT Term (Treas. Reg. § 25.2702-5(c)(4) (1992));
- the trust may not hold any assets other than one personal residence (Treas. Reg. § 25.2702-5(c)(5) (1992));
- the term holder's interest in the QPRT cannot be prepaid (also known as "commutation") (Treas. Reg. § 25.2702-5(c)(6) (1992));
- the trust ceases to be a QPRT if the residence ceases to be used or held as a personal residence of the term holder (Treas. Reg. § 25.2702-5(c)(7) (1992));
- within 30 days after the date on which the trust has ceased to be a QPRT, either:
  - the assets are distributed outright to the term holder;
  - the assets are converted to and held for the balance of the QPRT Term in a separate share trust meeting the requirements of a qualified annuity interest, such as a grantor retained annuity trust or "GRAT"; or
  - the trustee may elect to comply with either of these alternatives (Treas. Reg. § 25.2702-5(c)(8) (1992)); and
- the term holder may not re-acquire the personal residence (i.e., the trust is prohibited from selling or transferring

-4-

the residence, directly or indirectly, to the grantor (and certain others) during the QPRT Term or at any time after the QPRT Term (Treas. Reg. § 25.2702-5(c)(9) (as amended in 1997)).[3]

For purposes of a QPRT, a "personal residence" is: (a) the "principal residence" of the term holder; (b) one "other" residence of the term holder; or (c) an undivided fractional interest in either. Treas. Reg. § 25.2702-5(b)(2) and (c)(2) (1992). The definition of "principal residence" is self-explanatory; the grantor can have only one principal residence. For a property to qualify as an "other" residence, often a vacation property, the grantor must either use the property as a residence for 14 days during the calendar year or, if rented out for a portion of the year exceeding 140 days, the grantor must use the property as a residence for a number of days at least equal to 10% of the number of days it is rented out. Treas. Reg. § 25.2702-5(c)(2)(i)(B) (1992) (referencing I.R.C. § 280A(d)(1) for definition of "other" residence).

Another IRS regulation, Treas. Reg. § 25.2702-5(c)(7)(i) (1992), specifically discusses "cessation of use as a personal residence." Under that provision, a "residence is held for use as a personal residence of the term holder so long as the residence

---

[3] On December 23, 1997, the IRS adopted this regulation, 26 C.F.R. § 25.2702-5(c)(9), and it applies to trusts created after May 16, 1996. The preamble to the regulations, however, states: "Treasury and the IRS wish to clarify that the IRS will apply these regulations only to post-effective date trusts. Nevertheless, Treasury and the IRS have the authority to apply established legal doctrines to disqualify a pre-effective date trust in cases where the statutory purpose has clearly been violated."

is not occupied by any other person and is available at all times for use by the term holder as a personal residence."

The above noted amendatory regulation prohibited any grantor buy-back provision and required proper modification of the QPRT to preserve its QPRT qualification. Even if the IRS delayed implementation of this amendatory regulation to QPRTs created after May 16, 1996, Treas. Reg. § 25.2702-5(b)(1)(third sentence)(1992), as noted by the bankruptcy court and in effect prior to the 1997 amendment, provides "[a] trust does not meet the requirement of this section if, during the original duration of the term interest, the residence may be sold or otherwise transferred by the trust or may be used for a purpose other than a personal residence of the term holder."

## 2. The QPRT at issue

In 1994, Debtor, who holds a law degree and has previously practiced law, created the 518 Trust as a QPRT pursuant to Treas. Reg. §§ 2702 and 25.2702-5 for a residence located in Newport Beach, California (the "518 Property") for the benefit of the Ferrante Children. It provided for a twenty-year QPRT Term, to end in 2014. Debtor served as the initial trustee. At one time his former father-in-law served as trustee. His long-time friend, Shinn, serves as the current trustee. The 518 Property is a 5,500 square foot luxury waterfront home with fifty feet of bay frontage. It features high coffered ceilings, a pool and spa, a wine cellar, a gaming parlor, a custom kitchen, a rooftop deck with panoramic views and Winston Churchill's personal fireplace mantel. The 518 Property is currently listed for sale at $7.495 million.

-6-

The issue before us requires a careful analysis of the IRS regulations for a QPRT and the 518 Trust provisions.  The following trust provisions are pertinent:

Paragraph II: <u>Irrevocability</u>.  This trust and all interests in it are irrevocable, and the grantor has no power to alter, amend, revoke, or terminate any trust provision or interest whether under this instrument or any statute or rule of law.

Paragraph III A.4.: <u>Option to Purchase Residence</u>.  The Grantor shall have the option to acquire all or part of the Residence from the trust immediately prior to the expiration of the trust.  The option price will be the then fair market value of the Residence then held by this Trust.

Paragraph III B.  <u>When the Trust Terminates</u>.  The Trust terminates only as provided in this paragraph:

3.  <u>Cessation of Personal Residence Trust Status</u>.  Unless the Trustee makes a timely election under subparagraph III [C.], this trust shall terminate when it ceases to be a Qualified Personal Residence Trust ("QPRT"), and on such termination the Trustee shall distribute all of the trust assets to the Grantor . . . .

4.  The date on which the Residence . . . ceases to be used or held for use as a personal residence shall be known as the "Cessation Date."

Paragraph III C.  <u>Conversion to a Grantor Retained Annuity Trust</u>.  Within thirty (30) days from the date on which this trust would otherwise terminate under subparagraph III [B.3.], the Trustee may elect to convert the trust to a Grantor Retained Annuity Trust ("GRAT") . . . .

Paragraph III A.4. is referred to by the parties as the "buy-back" provision.

**3.  Prior state court litigation against Debtor and the 518 Trust**

In 2004, William Seay ("Seay"), a former trustee of the 518 Trust who loaned Debtor money, obtained a default judgment against Debtor for approximately $2.4 million and recorded an

-7-

abstract of judgment in Orange County.  In 2008, Seay filed an action in the probate court against the 518 Trust to revoke it, to obtain the 518 Property and to satisfy his money judgment.  Seay contended that Debtor created the 518 Trust as a sham to avoid creditors' claims and that Debtor had reserved the power to revoke the trust.  The probate court dismissed Seay's action on the motion of Debtor's former wife, Maria a/k/a Mia Ferrante ("Mia"), as guardian for the 518 Trust remainder beneficiaries, the Ferrante Children.

In an unpublished opinion, the California Court of Appeal affirmed the probate court and held the 518 Trust was irrevocable and protected from judgment execution.  Importantly, the appellate court noted that Seay did not seek to reach Debtor's beneficiary, life estate or reversionary interest.  The appellate court dismissed any argument of trust revocability on the basis that a judgment creditor cannot establish that an irrevocable trust is revocable based on subsequent conduct of the settlor (citing Laycock v. Hammer, 141 Cal. App. 4th 25, 30-31 (2006)).

**B.   Postpetition events**

Debtor filed a chapter 7 bankruptcy case on January 11, 2010. He received a discharge in January 2012.

Subsequently, Trustee filed an adversary complaint against Debtor, the 518 Trust and others for turnover of estate property, declaratory relief and for revocation of Debtor's discharge. Trustee later filed a first amended complaint and then a second amended complaint, the operative complaint at issue.  While the first amended complaint was pending, Trustee filed two motions seeking to declare the 518 Trust revocable and to sell the

-8-

518 Property for the benefit of creditors. Appellants opposed both motions, but the bankruptcy court never ruled on them.

### 1. Trustee's motion for summary judgment or, alternatively, for partial summary adjudication

Trustee then filed a motion for summary judgment or, alternatively, for partial summary adjudication, seeking an order revoking the 518 Trust and turning the property over to Debtor's bankruptcy estate ("MSJ"). Specifically, Trustee contended the 518 Trust was revocable, despite the irrevocability language contained in Paragraph II. Under Paragraph III B.3., the 518 Trust would lose its QPRT status once the 518 Property ceased to be Debtor's personal residence or ceased to be held by the trustee for Debtor's use as a personal residence. And, once the 518 Trust lost its QPRT status, the trust terminated and all trust assets reverted to Debtor.

Trustee argued that Ferrante could revoke the 518 Trust simply by not using the 518 Property as his personal residence, which was solely within his control. This "back door" provision gave Debtor the power to revoke the 518 Trust at will, thereby rendering it a revocable trust under California law and property of the estate. Trustee disputed Appellants' argument that compliance with QPRT regulations absolved Debtor and the trust from liability.

Alternatively, Trustee argued that the 518 Trust terminated in March 2009, when Debtor actually ceased using the 518 Property as his personal residence. Under Paragraph III B.4., the 518 Trust terminated on the date on which the 518 Property ceased to be held for use as Debtor's personal residence. On March 1,

-9-

2009, a former trustee of the 518 Trust executed a lease for the 518 Property with Shinn, making it Shinn's "exclusive" residence for two years. This lease directly contradicted Treas. Reg. § 25.2602-5(c)(7)(i) (1992) that the residence not be "occupied by any other person" and be "available at all times for use by the term holder." Thus, argued Trustee, because the 518 Property was not "held for use" as Debtor's personal residence, the 518 Trust ceased to be a QPRT. As a result, the 518 Property revested in Debtor and became property of Debtor's estate.

Additionally, the Trustee argued that noncompliance with the amended regulations prohibiting a buy-back provision terminated the QPRT qualification of the 518 Trust, requiring the QPRT trustee to elect a timely conversion to a GRAT, which did not happen. Consequently, the termination required the trustee to distribute the 518 Property to the Debtor.

Appellants opposed the MSJ. They contended that termination of the 518 Trust could occur **only** upon (1) Debtor's death, (2) expiration of the twenty-year QPRT Term or (3) cessation of its QPRT status, and none of these "terminating events" had occurred. Appellants disputed Trustee's contention that the 518 Trust terminated if Debtor ceased to live in the 518 Property. They argued that QPRT regulations did not require Debtor to actually live in the 518 Property for it to be deemed his personal residence; he simply had to have the "right" to occupy the property or live there for a minimum of fourteen days a year. Thus, so long as Debtor could reside at the 518 Property for fourteen days annually, it qualified as his "personal residence," and the 518 Trust retained its QPRT status. As for the 2009 Shinn

-10-

lease, Debtor contended it was never effectuated and did not terminate the 518 Trust.

Appellants further argued that because the 518 Trust complied with all QPRT regulations, and because QPRTs are irrevocable as a matter of law, the irrevocability of the 518 Trust survived and the 518 Property did not constitute property of Debtor's bankruptcy estate. As for the requirement under 26 C.F.R. § 25.2702-5(c)(9) — that the trust may not sell or transfer the residence to the grantor during or after the QPRT Term — Debtor contended that even though the 518 Trust contained the now-prohibited "buy-back" language, this regulation, promulgated in 1997, occurred after creation of the 518 Trust and did not apply. Appellants additionally contended that under California law Debtor could not turn an irrevocable trust into a revocable one with his post-creation conduct; it could only be set aside by petition of all beneficiaries.

### 2. The bankruptcy court's ruling on the MSJ

Prior to the MSJ hearing, the bankruptcy court issued a lengthy tentative ruling, which it adopted as its final ruling and incorporated into its order. The bankruptcy court found in favor of Trustee on two independent grounds. First, after carefully analyzing the requirements for and nature of QPRTs, the court reasoned that QPRTs are not irrevocable trusts, unlike spendthrift trusts, because a grantor can terminate QPRT status by ceasing to reside in the trust property.[4] Further, according to the

---

[4] The bankruptcy court acknowledged the IRS's letter at 26 C.F.R. § 601.201 Rev. Proc. 2003-42, which sets forth an
(continued...)

-11-

518 Trust, once QPRT status was lost the trust terminated and all assets were to be distributed to Debtor. Therefore, if Debtor could terminate the 518 Trust at his discretion, so could Trustee, as that power belonged to the estate. Ultimately, in the court's opinion, QPRTs are gift and estate tax delay devices, not estate planning or creditor protection devices.

Alternatively, the bankruptcy court found that the now-prohibited "buy-back" provision allowing Debtor to purchase the 518 Property from the trust immediately prior to the end of the QPRT Term violated QPRT requirements and established revocability or terminability. Accordingly, because the court considered the 518 Trust to be a revocable or terminable trust, Trustee could revoke or terminate it for the benefit of creditors.

During oral argument at the MSJ hearing, counsel for Debtor and the 518 Trust asked the bankruptcy court what effect, if any, the California appellate court decision in Seay v. Ferrante had in this case. The bankruptcy court opined that it had no preclusive effect on the estate, because no one represented the estate in that action. The court also distinguished the two non-controlling cases cited by Appellants that reviewed QPRTs in bankruptcy and determined them to be irrevocable and not property of the estate. In the court's opinion, those cases focused on different issues, such as fraudulent conveyance, and did not engage in any real

[4](...continued)
example of a sample QPRT document containing irrevocability language not unlike the 518 Trust. The court reasoned that even though the IRS indicates it will not contest an instrument containing those provisions, this IRS decision was not the same as a statutory requirement.

-12-

analysis of "what exactly does it mean to be 'irrevocable' in this context with the teaching that anything the Debtor . . . could do so can his trustee." Hr'g Tr. (Jan. 23, 2014) 25:12-26:17.

The bankruptcy court entered an amended order granting partial summary adjudication to Trustee on the issue of revocability of the 518 Trust on March 5, 2014 ("MSJ Order").[5]

### 3. The motion to reconsider the MSJ Order

Appellants timely moved for reconsideration of the MSJ Order ("Motion to Reconsider"). Appellants first contended the bankruptcy court erred in determining that QPRTs are not irrevocable trusts, when IRS regulations mandate that all QPRTs are irrevocable despite the word "irrevocable" not appearing in the statutes. In sum, argued Appellants, QPRT statutes apply only to completed gifts. Therefore, a QPRT must be an irrevocable trust or a completed gift to it could not be made.

Appellants contended the bankruptcy court further erred in determining that since QPRTs terminate upon cessation of QPRT status, QPRTs are not irrevocable trusts. Debtor argued that when a trust ceases to qualify as a QPRT, the trustee (not the grantor) may elect to convert it to a GRAT — another type of irrevocable retained interest trust — as opposed to distributing the trust assets outright. The GRAT then makes annuity payments to the grantor as specified in the trust document, with the balance of the corpus to be paid to the beneficiaries at the end of the stated term. Finally, Debtor argued that his ability to buy back

---

[5] The bankruptcy court entered an initial order granting partial summary adjudication to Trustee on January 29, 2014. The court later entered the amended order because the tentative ruling from January 23 was not attached to the January 29 order.

the 518 Property prior to the expiration of the QPRT Term did not terminate its QPRT status, as such regulations did not exist when Debtor created the 518 Trust in 1994. In conclusion, Debtor contended that, because he had no dominion or control over the 518 Trust, neither did Trustee.

In opposition, Trustee argued that the 518 Trust, although created in 1994, still had to comply with the IRS's prohibition against any buy-back provisions in accordance with 26 C.F.R. § 25.2702-5(c)(9). On December 23, 1997, the Department of Treasury issued 62 Fed. Reg. 66988 adding 26 C.F.R. § 25.2702-5(a)(2), which provides that a trust created before January 1, 1997, that does not comply with the requirements under paragraph (b) or (c), would still be treated as a QPRT if modified, but the reformation had to be commenced within ninety days after December 23, 1997, and had to be completed within a reasonable time after commencement. No evidence existed showing that Debtor modified the 518 Trust or began any compliance modification. As a result, argued Trustee, the buy-back provision alone invalidated the 518 Trust's QPRT status. Trustee further argued that the 518 Trust could not be converted to a GRAT when it ceased to be a QPRT because its terms did not comply with 26 C.F.R. § 25.2702-5(c)(8)(C)(ii), which prohibits additional contributions to the trust; the 518 Trust contained no such prohibition.

In response to Appellants' newly-raised argument that a QPRT must be an irrevocable trust or a completed gift to it could not be made, Trustee contended that in looking at the substance of the 518 Trust, Debtor did **not** part with dominion and control and

-14-

retained power to change the disposition of the trust. QPRT regulation 26 C.F.R. § 25.2511-2(c) specifies that "a gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself." Trustee argued that this reservation of power by Debtor, to either purchase the 518 Property prior to the expiration of the QPRT Term or by ceasing to use it as his personal residence, rendered the gift incomplete and the 518 Trust revocable or terminable.

In reply, Appellants argued that Debtor's right to purchase the 518 Property just prior to the end of the QPRT Term did not make the 518 Trust revocable or, even if it did, the 518 Trust would have converted to a GRAT on the trustee's timely election to do so. Moreover, argued Appellants, the 518 Trust's failure to comply with 26 C.F.R. § 25.2702-5(a)(2) to modify the trust did not cause it to lose its QPRT status and terminate. Submitted with Appellants' reply was a declaration from Mortimer Laski, the attorney who drafted the 518 Trust. He stated that it constituted an irrevocable trust and did not terminate if it deviated from QPRT laws.

In its tentative ruling, the bankruptcy court expressed its intent to deny the Motion to Reconsider on the basis that Appellants had failed to show manifest error. The court analyzed and rejected each of Appellants' arguments, including those raised for the first time in the motion. After hearing oral argument from the parties, the court adopted its tentative ruling as its final ruling. The court agreed to certify the MSJ order under Civil Rule 54(b) so it could be appealed, but denied Debtor's oral request for a stay pending appeal.

-15-

The bankruptcy court entered an order denying the Motion to Reconsider and certifying the MSJ Order for appeal under Civil Rule 54(b) on April 16, 2014 ("Reconsideration Order"). These timely related appeals followed.[6]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(E) and (O). It entered the MSJ Order on fewer than all claims asserted by Trustee. Ordinarily, an appeal from such a judgment would be interlocutory, but the bankruptcy court ruled that the partial summary adjudication was final under Civil Rule 54(b), as incorporated by Rule 7054. In actions involving multiple claims, Civil Rule 54(b) permits a court to direct entry of a final judgment as to one or more (but fewer than all) of the claims, but "only if the court expressly determines there is no just reason for delay." No party appealed the Civil Rule 54(b) certification. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in ruling that the 518 Trust was a revocable or terminable trust because it contained the "buy-back" provision?

2. Did the bankruptcy court err in ruling that QPRTs are revocable trusts as a matter of law?

3. Did the bankruptcy court abuse its discretion in denying the Motion to Reconsider?

---

[6] On May 7, 2014, we issued an order granting a temporary stay pending appeal. On Trustee's request to reconsider that order, we dissolved the temporary stay on June 3, 2014.

-16-

## IV. STANDARDS OF REVIEW

The bankruptcy court's order granting partial summary adjudication is reviewed de novo. Shahrestani v. Alazzeh (In re Alazzeh), 509 B.R. 689, 692-93 (9th Cir. BAP 2014). "Viewing the evidence in the light most favorable to the non-moving party, we must determine 'whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law.'" New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 141 (9th Cir. BAP 2007)(citation omitted).

We review denial of a motion for reconsideration for abuse of discretion. Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1066 (9th Cir. 2010); Collect Access LLC v. Hernandez (In re Hernandez), 483 B.R. 713, 719 (9th Cir. BAP 2012). Accordingly, we reverse where the bankruptcy court applied the incorrect legal rule or where its application of the law to the facts was illogical, implausible or without support in inferences that may be drawn from the record. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

## V. DISCUSSION

**A.    Summary judgment standards**

A party is entitled to judgment as a matter of law when no genuine dispute exists as to any material fact. Civil Rule 56(a), as incorporated by Rule 7056. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The

-17-

court "shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." Id. A "genuine" issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248.

Ninth Circuit law permits a court to interpret unambiguous contracts in the context of a motion for summary judgment. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 990 (9th Cir. 2006) (citing S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888–89 (9th Cir. 2003)). No party has contended that the 518 Trust is an ambiguous document; we do not perceive it to be.

**B. Analysis**

**1. The bankruptcy court did not err in ruling the 518 Trust was revocable or terminable.**

Appellants spend a great deal of time arguing that the bankruptcy court erred in ruling that QPRTs are revocable trusts. As for the bankruptcy court's alternative ruling — that the 518 Trust failed to comply with QPRT regulations — Appellants relegate their argument to a mere footnote. Appellants contend that even if the 518 Trust failed to comply with subparagraph (c)(9) after its enactment in December 1997, that noncompliance does not negate the completed gift of the 518 Property to the 518 Trust in 1994 or compel its irrevocability in 1994. They further argue that neither 26 C.F.R. § 25.2702-5(c)(7) nor any other regulation, nor any paragraph of the 518 Trust, indicates that a trust compliant with QPRT regulations subsequently terminates if the laws are later changed or modified. Appellants raised these arguments during the hearing on the MSJ motion. Hr'g

-18-

Tr. at 6:1-22.

Appellants concede the 518 Trust contains the "buy-back" language, which is prohibited under 26 C.F.R. § 25.2702-5(c)(9). They continue to argue that this regulation does not apply because it was added in 1997, after creation of the 518 Trust in 1994. We, as did the bankruptcy court, recognize this argument, given the imposed effective dates specified in Treas. Reg. § 25.2702-7. The analysis, however, does not end with the imposed effective date. QPRT paragraph III A.4. provides "[t]he grantor shall have the option to acquire all or part of the Residence from the trust immediately prior to the expiration of the trust. The option price will be the then fair market value of the Residence then held by this Trust." The third sentence of Treas. Reg. § 25.2702-5(b)(1) provides "[a] trust does not meet the requirement of this section if, during the original duration of the term interest, the residence may be sold or otherwise transferred by the trust or may be used for a purpose other than as a personal residence of the term holder." The 1997 amendments added the fourth through eighth sentences of this regulation and Treas. Reg. § 25.2702-5(c)(9), which specifically prohibited any sale or transfer to the grantor. We conclude that the QPRT provision at paragraph III A.4. is contrary to the requirement contained in the third sentence of Treas. Reg. § 25.2702-5(b)(1) as it allows the grantor to exercise an option to acquire the Residence **immediately prior to the expiration of the trust** in violation of the regulation defining "personal residence trust" as such regulation specifies that the trust does not meet the requirements of the section if **during the original duration of the**

-19-

**term interest** the Residence may be sold or transferred.

On December 23, 1997, the Department of Treasury promulgated regulations prohibiting QPRT documents from allowing the sale of the residence to the grantor during the QPRT Term or at any time after the QPRT Term that the trust is a grantor trust. See 62 Fed. Reg. 66988 (Dec. 23, 1997), adding 26 C.F.R. § 25.2702-5(c)(9). This regulation also added 26 C.F.R. § 25.2702-5(a)(2), which provides in relevant part:

> Modification of trust. A trust that does not comply with one or more of the regulatory requirements under paragraph (b) or (c) of this section will, nonetheless, be treated as satisfying these requirements if the trust is modified, by judicial reformation (or nonjudicial reformation if effective under state law), to comply with the requirements. . . . In the case of a trust created before January 1, 1997, the reformation must be commenced within 90 days after December 23, 1997 and must be completed within a reasonable time after commencement.

Thus, in order to comply with QPRT regulations, modification of the 518 Trust needed to "commence" within 90 days after December 23, 1997, and had to be completed "within a reasonable time from commencement." The Trustee never modified the 518 Trust to comply with the third sentence of Treas. Reg. 25.2702-5(b)(1), which disqualified the 518 Trust as a QPRT if the Residence could be sold or transferred during the original term of the 518 Trust. The parties do not dispute that the Trustee never modified the 518 Trust. Because of this failure to modify the 518 Trust to eliminate the disqualifying language in paragraph III B.4. that is contrary to the third sentence of Treas. Reg. § 25.2702-5(b)(1), the 518 Trust does not comply with QPRT regulations and ceased to be a QPRT.

Paragraph III B.3. in the 518 Trust provides that the "trust

-20-

shall terminate when it ceases to be a [QPRT], and on such termination the Trustee shall distribute all of the trust assets to the Grantor." Although Paragraph III.C. of the 518 Trust provides that within thirty days of the trust's termination the trustee may elect to convert it to a GRAT, this was not done. Thus, the 518 Trust terminated in 1998 and its terms required distribution of the trust assets, including the 518 Property, to Debtor at that time. As a result, these assets are property of Debtor's bankruptcy estate. § 541(a)(7). We reject Debtor's argument that failing to comply with QPRT regulations did nothing to change the fact that Debtor transferred a completed and irrevocable gift of property to the 518 Trust in 1994.

Thus, we conclude the bankruptcy court did not err in granting partial summary adjudication to Trustee on the basis that the 518 Trust failed to comply with QPRT regulations. Because we are able to affirm the MSJ Order on that basis, we need not address Appellants' other argument that the bankruptcy court erred in ruling that the 518 Trust is, and QPRTs in general are, revocable trusts as a matter of law.

**2. Appellants assert no argument with respect to the Reconsideration Order.**

Although Appellants appealed the Reconsideration Order, they do not assert any argument that the bankruptcy court abused its discretion in denying the Motion to Reconsider. Therefore, any such argument has been abandoned. City of Emeryville v. Robinson, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010)(appellate court in this circuit will not review issues which are not argued specifically and distinctly in a party's opening brief).

-21-

In any event, we fail to see any proper grounds on which it could have been granted. Appellants essentially rehashed old arguments or raised new ones that could have been raised in opposition to the MSJ. <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 486 (2008)(motions under Civil Rule 59(e) may not be used to relitigate old matters or to raise arguments that could have been raised prior to the entry of judgment); <u>McDowell v. Calderon</u>, 197 F.3d 1253, 1255 (9th Cir. 1999)(same). Our review of the record shows Debtor did not meet the burden of showing any manifest error by the bankruptcy court in its ruling on the MSJ.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM.