
**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ANDREA GROVES,<br>        Debtor. | BAP Nos.  AZ-22-1130-SFL<br>        AZ-22-1131-SFL<br>(Related Appeals) |
| A&D PROPERTY CONSULTANTS, LLC,<br>        Appellant,<br>v.<br>A&S LENDING, LLC,<br>        Appellee. | Bk. No. 2:18-bk-14761-BKM<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda K. Martin, Bankruptcy Judge, Presiding

APPEARANCES:
Ronald J. Ellett of Ellett Law Offices, P.C. argued for Appellant; David Lee
Allen of Jaburg & Wilk, P.C. argued for Appellee.

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

These appeals call into question a debtor's ability to sell property co-
owned with a nondebtor free and clear of liens against the nondebtor's

interests under 11 U.S.C. § 363(f).[1] The chapter 13 debtor, Andrea Groves ("Groves"), moved to sell real property jointly owned with her wholly owned limited liability company, appellant A&D Property Consultants, LLC ("Consultants"), under § 363(h). Groves sought to sell the jointly owned property free and clear of the deed of trust encumbering Consultants' interest securing a joint debt owed to appellee A&S Lending, LLC ("A&S"). She argued that A&S had forfeited its secured claim by failing to bring a compulsory counterclaim under Civil Rule 13(a), made applicable by Rule 7013, in a prior adversary proceeding.

Consultants joined the sale motion. A&S did not oppose the sale but insisted that Consultants' net sale proceeds be paid to A&S on its secured claim at closing. The bankruptcy court approved the sale but agreed with A&S that Consultants' interest remained subject to A&S's deed of trust. The court ordered that Consultants' proceeds be disbursed to A&S at closing. The court also entered a separate order stating that A&S had not forfeited its counterclaims under the promissory note.

These appeals are far astray from the sale motion presented to the bankruptcy court, which has now faded into the background. Consultants has appealed both orders but only challenges the court's ruling that A&S did not forfeit its underlying claim and its interest in Consultants' share of

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

the net sale proceeds. Consultants miscomprehends the limited nature of the underlying motion to sell; it is not a vehicle for nondebtors to challenge encumbrances against their interests in the jointly owned property being sold under § 363(h). Consultants' interest in the property remained subject to A&S's recorded deed of trust.

We hold that Groves could not use § 363(f)(4) to sell Consultants' interest in real property free and clear of A&S's lien. Accordingly, A&S was entitled to payment of its lien from Consultants' share of the proceeds. To challenge A&S's secured claim, Consultants should have sought to enjoin the distribution of the sale proceeds. It failed to do so. Accordingly, the bankruptcy court properly required that Consultants' net sale proceeds be distributed to A&S pursuant to its recorded deed of trust.

At the parties' urging, the bankruptcy court went beyond the motion to sell and considered the validity of A&S's secured claim against Consultants' interest in the real property. However irregularly raised, all parties consented to the court's determination of the issue. We, therefore, hold that any procedural error in determining the question as part of the motion to sell was harmless and conclude that the bankruptcy court had jurisdiction to determine the question presented. We agree with the bankruptcy court that A&S did not forfeit its secured claim against Consultants by failing to seek any recovery against Consultants in Groves' prior adversary proceeding to determine the validity of the deed of trust. Accordingly, we AFFIRM.

## FACTS[2]

Groves and Consultants jointly owned two parcels of real property in Phoenix, Arizona as tenants in common. One was an investment property located on Rancho Drive ("Rancho Property"). The other was Groves' residence located on 44th Street ("Residence"). Groves and Consultants borrowed money from Merchants Funding AZ, LLC ("Merchants") and jointly executed a promissory note secured by a deed of trust covering both properties. Though A&S claimed that Merchants meant to encumber both owners' interests in the properties, that is not what the deed of trust said. Instead, the deed of trust only encumbered Consultants' interest in the Rancho Property and Groves' interest in the Residence.

Merchants assigned its interest in the loan and deed of trust to A&S, though Merchants continued to service the loan.

### A.    Groves files for bankruptcy and sues A&S for declaratory relief.

Groves filed her chapter 13 bankruptcy petition in December 2018. She scheduled Merchants as a secured creditor but listed the claim as disputed. A&S objected to Groves' proposed plan, claiming its deed of

---

[2] Many of the facts set forth below are taken from our decision in the prior appeal involving the same parties concerning the scope of A&S's deed of trust. *See A&S Lending, LLC v. Groves (In re Groves)*, 2022 WL 2720622 (9th Cir. BAP July 13, 2022). We also exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

trust encumbered all interests in the Rancho Property and the Residence. However, neither A&S nor Merchants filed a proof of claim.

Groves then filed an adversary complaint against A&S seeking declaratory relief "to determine the validity, priority, or extent of a lien or other interest in property." Consultants was not named as a party. Yet, Groves sought a declaratory judgment that A&S's deed of trust only encumbered Consultants' interest in the Rancho Property, and not her interest. Conversely, she also sought a judgment that A&S's deed of trust only encumbered her interest in the Residence, and not Consultants' interest.

A&S obtained leave to amend its original answer to state a "counterclaim" against Groves, and to bring a "cross-claim" against Consultants, for reformation of the deed of trust. A&S's reformation claims sought to confirm that the deed of trust encumbered all interests in both properties. A&S did not seek any monetary recovery or foreclosure. In response, Groves filed a second amended complaint to add an avoidance claim directed at A&S's reformation counterclaim. Consultants' only role in the adversary proceeding was as a third-party defendant to A&S's reformation claim.

After a two-day trial, the bankruptcy court entered judgment in favor of Groves and Consultants. The court ruled that the A&S deed of trust encumbered only Consultants' interest in the Rancho Property and Groves' interest in the Residence. The court dismissed with prejudice A&S's

reformation claims. A&S appealed, but we affirmed. *In re Groves*, 2022 WL 2720622, at *6.

## B.     The motion to sell the Rancho Property.

Having obtained her declaratory judgment as to the scope of the deed of trust, Groves moved to sell the Rancho Property under § 363(h). Groves stated that she consented to the proposed sale on behalf of Consultants. She sought to sell both her interest and Consultants' interest in the Rancho Property free and clear of all liens under § 363(f). She recognized that A&S continued to assert in the pending appeal that its deed of trust encumbered her interest in the Rancho Property. Groves contended that, having prevailed in the prior adversary, she established a bona fide dispute, at a minimum, that the A&S deed of trust did not encumber her interest.[3]

As to Consultants' interest in the Rancho Property, A&S's lien was unchallenged in the prior adversary proceeding. In fact, the adversary judgment specifically acknowledged it by stating: "the lien of [A&S] only attaches to the undivided interest of [Consultants] in the [Rancho Property]." Still, Groves sought to sell the Rancho Property free and clear of the lien against Consultants' interest under § 363(f)(4). Groves argued that a bona fide dispute existed whether A&S had forfeited its claim against Consultants when it failed to assert its loan rights in the adversary

---

[3] The motion treated her share of the net sale proceeds as unencumbered and proposed to turn them over to her chapter 13 trustee at closing.

6

proceeding as a compulsory counterclaim under Rule 7013. Groves reasoned that this left A&S with "only tenuous, disputed claims against the property." The motion requested that the court order any liens to attach to the sale proceeds and for the sales proceeds to be held in trust pending a resolution of the dispute and further court order.

A&S opposed the sale but exclusively focused on the argument that it had forfeited its claim for the outstanding loan balance and, therefore, had no secured claim against Consultants' interest. It pointed out that Groves had sought, and the judgment declared, that A&S's lien encumbered only Consultants' interest in the Rancho Property. It did not, however, address whether the parties' arguments created a bona fide dispute for purposes of selling the Rancho Property free and clear of its deed of trust. Indeed, the opposition did not address at all the bankruptcy estate's asserted right to sell both its interest and Consultants' interest in the Rancho Property free and clear of the deed of trust under § 363(f). Rather, A&S requested that "upon the sale of the Rancho Property one-half of the net sales proceeds be paid to A&S as the secured lien holder of [Consultants'] one-half interest in the Rancho Property."

In her reply to A&S's opposition, Groves noted that A&S did not object to the sale of the Rancho Property or deny that its secured claim against her was subject to a bona fide dispute. Groves maintained that the court should recognize that a bona fide dispute existed under § 363(f)(4) and should determine in a future proceeding whether A&S retained its

secured claim. Consistent with this argument, Groves requested that the court "enter an order granting the Motion to Sell in all respects and providing that A&S's lien, if any, shall attach to half of the net sales proceeds. The Court should then entered [sic] a second order ruling that A&S waived its claims under the Promissory Note by failing to bring them as required by Rule 13."

At the hearing on the sale motion, Groves began by noting that there was no opposition to the sale, only to the distribution of the proceeds. The parties discussed the bankruptcy court's jurisdiction to decide whether A&S held a valid, secured claim against Consultants. They then proceeded to argue the merits of Groves' claim that A&S had forfeited its claim against Consultants.

The bankruptcy court agreed that a bona fide dispute under §363(f)(4) existed as to any lien against Groves' interest in the Rancho Property that remained on appeal. It then ruled that A&S's underlying claim against Consultants was not a compulsory counterclaim to Groves' challenge to the deed of trust in the prior adversary proceeding. Accordingly, it required that Consultants' interest in any net proceeds from sale of the Rancho Property be paid in partial satisfaction of A&S's deed of trust.

On June 22, 2022, the bankruptcy court entered an order approving the sale and a separate order rejecting Groves' and Consultants' request that the court deem A&S's loan and lien rights forfeited. Consultants

timely appealed both orders.

## JURISDICTION

We have jurisdiction under 28 U.S.C. § 158. Explaining the bankruptcy court's subject matter jurisdiction is slightly more complex.

### A.    The bankruptcy court had subject matter jurisdiction.

The contested matter before the bankruptcy court was limited to the approval of the proposed sale under § 363(f) and (h). Because the motion to sell "arose under" title 11,[4] the court had subject matter jurisdiction under 28 U.S.C. § 1334 to determine the sale motion, a core bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(N).[5] Accordingly, the bankruptcy court had subject matter jurisdiction over the sale motion.

At the hearing on the motion to sell, the court also rejected the

---

[4] *See Battle Ground Plaza, LLC v. Est. of Jessen (In re Ray)*, 2008 WL 8449610, at *8 (9th Cir. BAP Dec. 31, 2008) (indicating that § 363 sales "arise under" title 11), *rev'd on other grounds and remanded sub nom., Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124 (9th Cir. 2010). Notwithstanding *Ray*, courts seem to struggle over whether § 363 sales "arise under" title 11 or "arise in" a case under title 11. *See, e.g., New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61, 68 (1st Cir. 2002). *Compare In re McLendon*, 506 B.R. 243, 245 (Bankr. N.D. Miss. 2013) (identifying § 363 sale as "a core proceeding arising under [t]itle 11"), *with In re Murchison*, 54 B.R. 721, 725 (Bankr. N.D. Tex. 1985) (indicating that § 363 sales are proceedings "arising in the Code"). At bottom, it makes no difference to the resolution of this appeal whether the instant § 363 sale "arose under" or "arose in" Groves' bankruptcy case.

[5] Consultants' sale proceeds were also to be distributed at closing under § 363(j). Accordingly, the distribution of Consultants' net sale proceeds also "arose under" title 11, and the bankruptcy court had the jurisdiction to enter the order requiring distribution of those proceeds to A&S pursuant to its recorded deed of trust under 28 U.S.C. § 1334.

argument that A&S had forfeited its secured claim. It entered a separate order denying Consultants' "request for an Order ruling that A&S Lending waived its counterclaims under the promissory note." Consultants raised the question of the bankruptcy court's jurisdiction to decide the validity of A&S's secured claim against it within its notice of issues on appeal. It did not, however, address the question in its appellate briefing. Still, we have an independent obligation to consider whether the bankruptcy court had jurisdiction. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

At a minimum, the bankruptcy court had "related to" jurisdiction to decide whether Consultants' share of the sale proceeds was encumbered by A&S's deed of trust. A&S's loan rights were secured by Groves' interest in the Residence and Consultants' interest in the Rancho Property. If A&S retained its secured claim against Consultants' interest in the Rancho Property, the amount of Groves' debt to A&S would decrease. Of course, if A&S had forfeited its claim against Consultants, then Groves would have been liable for the entirety of the joint debt. Because the enforceability of A&S's underlying claim against Consultants had the potential to materially impact Groves' bankruptcy, the bankruptcy court had "related to" jurisdiction to consider the question. *Fietz v. Great W. Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988).

## B.    Consultants has standing to appeal.

A&S contends that Consultants is not a "person aggrieved" and lacks

10

standing to appeal the bankruptcy court's orders. The person aggrieved standard is a prudential rule of appellate standing. *See Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1192 (9th Cir. 2018). Appellants are persons aggrieved for appellate standing purposes when the order on appeal diminishes their property, increases their burdens, or detrimentally affects their rights. *Id.*

The Ninth Circuit recently has questioned the continued validity of the prudential concept of bankruptcy appellate standing and the "person aggrieved" standard. *Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.)*, 66 F.4th 1214, 1218 (9th Cir. 2023). In *East Coast Foods*, the court concluded that it did not need to decide its continuing validity because the appellant there lacked Article III standing, which requires the appellant to show that it has: "(1) suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) the injury is fairly traceable to the defendant's conduct, and (3) the injury can be redressed by a favorable decision." *Id.* at 1219 (cleaned up); *see id.* at 1222 n.11.

Regardless of whether one couches the analysis in terms of Article III standing or person aggrieved standing, Consultants has standing to pursue this appeal. The sale order required payment of Consultants' 50% share of any net sale proceeds to A&S. As for the Civil Rule 13(a) order, it determined that A&S's lien was valid and enforceable against Consultants' interest in the Rancho Property. As such, the relief granted by the order caused Consultants concrete, particularized, and immediate injury that we

11

could redress if we were to reverse on appeal. It also was aggrieved by the court's orders for the same reasons.[6]

## ISSUES

1.      Did the bankruptcy court correctly determine that Groves and Consultants could not sell the Rancho Property free and clear of A&S's lien against Consultants' interest in the property?

2.      Did the bankruptcy court err when it declined to apply Civil Rule 13(a) to A&S's claim against Consultants?

3.      Did the bankruptcy court abuse its discretion by not imposing judicial estoppel against A&S?

## STANDARDS OF REVIEW

The controlling issues raised by these appeals require us to construe both bankruptcy statutes and the federal rules of practice and procedure. These present questions of law that we review de novo. *See Collect Access LLC v. Hernandez (In re Hernandez)*, 483 B.R. 713, 719 (9th Cir. BAP 2012). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

---

[6] We recognize that Consultants ultimately acquiesced to entry of the sale order that required payment of its share of the sale proceeds to A&S. But we see these circumstances as indistinguishable from those in *Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682, 688–89 (9th Cir. BAP 2010). There, we held that a chapter 13 debtor who was denied confirmation of its original plan but then confirmed an alternate plan had standing to appeal the denial of the first plan he/she proposed. Accordingly, we conclude that Consultants has satisfied its burden to demonstrate its standing.

12

The bankruptcy court's decision not to apply judicial estoppel is reviewed for an abuse of discretion. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any ground supported by the record. *In re Hernandez*, 483 B.R. at 719.

## DISCUSSION

Consultants contends that the bankruptcy court erred when it rejected the argument that A&S forfeited the underlying debt by failing to assert it in Groves' prior adversary proceeding. Alternately, it argues that the bankruptcy court erred when it failed to apply judicial estoppel to prevent A&S from asserting its secured claim.

Although we will address Consultants' arguments, we note that the validity of A&S's secured claim against a nondebtor's property was beyond the scope of the motion to sell. Consultants should have raised that challenge by filing an adversary proceeding, *see* Rule 7001(2), or in a separate action in a court of competent jurisdiction.[7] In either instance, it should have sought to enjoin distribution of the net sale proceeds based on

---

[7] To the extent that there was any procedural error in asking the bankruptcy court to rule on the validity of A&S's secured claim as part of the motion to sell, it was harmless error given the parties' clear consent.

13

the recorded deed of trust. Instead, Groves sought to avoid the consequences of A&S's deed of trust as to Consultants' interest through her motion to sell. Consultants now appeals the court's substantive decision, including the order approving the sale of the Rancho Property, because it required the distribution of Consultants' proceeds to A&S on its deed of trust. Based on the motion to sell as presented, this was all that should have been accomplished.

**A.      The Bankruptcy Code does not permit the bankruptcy court to authorize a sale free and clear of liens and interests attaching to a nondebtor co-owner's share of the property being sold under § 363(h).**

Groves assumed that she could use § 363 to sell the Rancho Property free and clear of A&S's deed of trust encumbering Consultants' interest. Under § 363(b)(1), after notice and a hearing, the bankruptcy court may authorize a trustee or debtor in possession to sell property of the estate outside the ordinary course of business. *See Citicorp Mortg., Inc. v. Brooks (In re Ex-Cel Concrete Co.)*, 178 B.R. 198, 202 (9th Cir. BAP 1995). In turn, § 363(f) permits the sale of estate property to be made free and clear of liens and other interests, with any such liens and interests to attach to the proceeds of sale, if one of several criteria are met. The relevant provisions in this instance were creditor consent or where such interest is in bona fide dispute. § 363(f)(2) and (4); *see also Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 37 (9th Cir. BAP 2008).

The ability to sell property, however, is generally limited to property

of the estate. With one relevant exception, the bankruptcy court lacks authority under either § 363(b) or (f) to approve a sale of property that is not property of the estate. *See Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171-72 (9th Cir. BAP 2001) (rejecting trustee's argument that exempt property could be sold pursuant to either § 363(b) or (f)); *see also Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 265-66, 268-69 (9th Cir. BAP 2005) (recognizing that the bankruptcy estate must have an interest in the property to be sold for any sale to occur under § 363(b) or (f) (citing *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 608–09 (9th Cir. 2004), *opinion withdrawn and superseded on other grounds*, 126 F. App'x 353 (9th Cir. 2005))).

Section 363(h) provides the sole statutory exception to the property of the estate requirement. *Hey v. Silver Beach, LLC (In re Silver Beach, LLC)*, 2009 WL 7809002, at *6 (9th Cir. BAP Nov. 3, 2009). When the estate jointly owns property with a nondebtor entity as tenants in common, joint tenants, or tenants by the entirety, § 363(h) permits the trustee or debtor in possession to sell both the estate's undivided interest and the nondebtor co-owner's interest in the subject property in certain situations. Groves moved to sell the Rancho Property under § 363(h) and Consultants agreed to the sale of its interest together with the estate's interest.

Because A&S appealed the judgment in the prior adversary proceeding that its deed of trust did not encumber Groves' interest in the Rancho Property, Groves moved to sell her interest free and clear of A&S's deed of trust under § 363(f)(4) based on the ongoing bona fide dispute. But

15

she also sought to sell Consultants' interest free and clear of A&S's lien based on § 363(f)(4). The motion argued that a bona fide dispute existed as to whether A&S's claim against Consultants survived the adversary proceeding. The bankruptcy court did not address the specific question as to whether there was a bona fide dispute under § 363(f)(4). Instead, it ruled that A&S had not forfeited its claim against Consultants. The initial question remains, however, whether § 363(f) can be applied to the sale of the nondebtor's interest in co-owned property under § 363(h).

We have found only two cases that generally discuss the application of § 363(f) to sales under § 363(h). *Compare Hull v. Bishop (In re Bishop)*, 554 B.R. 558 (Bankr. D. Me. 2016), *with In re Marko*, 2014 WL 948492 (Bankr. W.D.N.C. Mar. 11, 2014). In *Bishop*, the trustee filed an adversary complaint to avoid a mortgage and declare the residence of the debtor and her nondebtor husband free and clear of the disputed mortgage as to both interests held as joint tenants. *In re Bishop*, 554 B.R. at 559. The trustee sued the mortgagee under § 544 based on a defective notarial acknowledgment certifying the spouses' signatures on the mortgage. *Id.* The trustee persuaded the court that the mortgage should be avoided as against the debtor's interest in the property but the lien on her nondebtor husband's interest remained. *Id.* at 566, 567 & n.6.

Citing to § 105(a) rather than § 363(f), *Bishop* held that the nondebtor husband's interest in the residence could be sold free and clear of the

16

mortgagee's lien. As *Bishop* reasoned:

> **TD Bank is correct that section 363(f) authorizes sales free and clear, and that section 363(h), on its face, does not.** But this does not compel the result that TD Bank seeks. If the property were jointly owned, but not encumbered by a mortgage lien, the trustee could sell both ownership interests using a combination of subsections 363(b), (f), and (h). In those circumstances, the co-owner would be protected by subsections 363(i) and (j). *See* 11 U.S.C. § 363(i) (granting, in a sale under subsection (h), a right of first refusal to the co-owner); 11 U.S.C § 363(j) (directing, in a sale under subsection (h), the trustee to distribute the net proceeds to the co-owner according to its interest in the property). There is no good reason why the result should be different here.

*Id.* at 567 (emphasis added).[8]

In *Marko*, the debtors jointly owned a lake house with the husband's parents, holding title in joint tenancy. *In re Marko*, 2014 WL 948492, at *1. The property was subject to a secured debt that exceeded its value. *Id.* at *2. Debtor-husband purported to sell the lake house to a third party, David Reule. But the other three owners disputed the sale. They claimed that they neither had knowledge of, nor consented to, the sale. Debtors filed bankruptcy. The chapter 7 trustee sought to sell all of the interests in the lake house. *Id.* at *3. Both the nondebtor co-owners and the lienholder consented to the sale as proposed. *Id.* But Reule asserted that he owned the

---

[8] In *Bishop,* the trustee had not proposed a sale within the adversary proceeding but only sought to declare its rights. 554 B.R. at 568.

lake house and opposed the sale on multiple grounds. *Id.*

The bankruptcy court ultimately agreed with Reule's opposition and denied the trustee's sale motion. *Id*. at *3. However, the court also questioned whether the co-owners' interest in the lake house could be sold free and clear of Reule's disputed interest under § 363(f)(4).[9] The *Marko* court reasoned it was unlikely that a trustee could "use § 363(f)(4) **in connection with § 363(h)** . . . to sell the non-debtor co-owners' interests free and clear along with the Debtors'." *Id.* at *4 (emphasis added). *Marko* explained that to hold otherwise risked impermissibly overextending bankruptcy relief to nondebtor parties, when the Bankruptcy Code only afforded such relief to debtors and the bankruptcy estate. *Id. Marko* further expressed concern that the bankruptcy court's jurisdictional reach ordinarily did not include disputes concerning only nondebtor parties, and a dispute not involving the debtors presumably would be insufficient to justify application of § 363(f)(4). *Id.* Ultimately, the court chose not to decide the question in light of other deficiencies with the proposed sale. *Id.* at *5.

Of these two decisions, we find *Marko* more persuasive. Section

---

[9] The *Marko* court cited *Austien v. Schwartz (In re Gerwer)*, 898 F.2d 730, 733 (9th Cir. 1990), as evidence of the conflicting results reached in the few cases to consider the outer limits of § 363(f)(4). *Gerwer* considered whether the bankruptcy estate could sell interests in promissory notes free and clear of a dispute between the secured creditors. There, the dispute affected the property of the estate but did not involve a nondebtor's separate joint interest sold under § 363(h).

363(h) enables the bankruptcy court to authorize the sale of property the debtor jointly owns with nondebtors, but it does not permit the trustee or debtor-in-possession to sell free and clear of liens on the nondebtor party's interest in that jointly owned property. Section 363(f) expressly provides when an estate may sell property free and clear of liens and it, like § 363(b), is limited to the sale of property of the estate. *In re Popp*, 323 B.R. at 268-69; *In re Clark*, 266 B.R. at 171-72. Neither *Popp* nor *Clark* are outliers. The Ninth Circuit Court of Appeals and this Panel have issued numerous decisions reaffirming that these provisions only affect estate property. *See, e.g.*, *Citi Inv. Cap., Inc. v. Ehrenberg (In re Elieff)*, 2022 WL 14476315, at *1 (9th Cir. Oct. 25, 2022); *Richards v. Marshack (In re Richards)*, 2022 WL 16754394, at *4 (9th Cir. BAP Nov. 7, 2022), *appeal docketed*, No. 22-60058 (9th Cir. Dec. 15, 2022); *Fontaine v. Conn (In re Fontaine)*, 2010 WL 6259993, at *12 (9th Cir. BAP Nov. 26, 2010), *aff'd*, 472 F. App'x 738 (9th Cir. 2012); *In re Silver Beach, LLC*, 2009 WL 7809002, at *6-7. Though the estate may sell jointly owned property, the nondebtor co-owner's interest in the property does not become property of the estate, and the sale is subject to any liens or interests against the nondebtor's interest.

*Silver Beach* is instructive. In *Silver Beach*, the chapter 11 debtor-in-possession moved under § 363(b) and (f) to sell certain vacant property to which it held title. 2009 WL 7809002, at *2. The property's title was clouded by timeshare interests that one of debtor's predecessors in interest had granted to roughly 150 individuals. *Id.* Debtor asserted that it could sell

19

free and clear of the timeshare holders' interests under § 363(f). Four of the timeshare holders objected *Id.* Among other things, the objecting timeshare holders argued that the sale should be postponed until the parties' respective interests in the property were adjudicated. *Id.* at *3-4. The bankruptcy court approved the proposed auction sale over the timeshare holders' objections.

On appeal, the objecting timeshare holders argued that their interests in the property were not property of estate and could not be sold by the bankruptcy court. *Id.* at *5. This Panel agreed with the objecting timeshare owners and reversed the sale order. As we explained:

> Section 363(b) states the general rule that only "property of the estate" may be sold pursuant to its authority. The single statutory exception to the rule is section 363(h), which authorizes the sale of specified co-owned property. A section 363(f) sale cannot be used to transform property of others into property of the estate.

*Id.* at *6.

Unlike the case at bar, *Silver Beach* did not involve an attempted sale under § 363(h). Even so, *Silver Beach* stands for the proposition that § 363(b) and (f) extend only to sales of estate property. Though § 363(h) enables the bankruptcy court to authorize a trustee or debtor in possession to sell a co-owner's interest in property, it is necessarily subject to liens or interests against the nondebtor's interest. To hold otherwise would be at odds with the Bankruptcy Code's carefully crafted statutory scheme, which specifically limits those statutory powers. For this reason, § 363(f) did not

apply to the sale of Consultants' interest, and the bankruptcy court could not authorize the sale of the Rancho Property free and clear of A&S's recorded deed of trust under § 363(f)(4). Accordingly, the court properly required the net proceeds from the sale of Consultants' interest in the Rancho Property under § 363(h) to be turned over to A&S in partial satisfaction of its deed of trust.[10] *See* § 363(j).

## B.    A&S did not forfeit its secured claim under Civil Rule 13(a).

Consultants adopts Groves' arguments before the bankruptcy court that under Rule 7013, A&S forfeited its underlying debt by failing to bring a compulsory counterclaim in Groves' adversary proceeding. It contends

---

[10] We are aware of the prefatory language at the beginning of § 363(h) stating "[n]otwithstanding subsection (f) of this section . . . ." The simplest explanation for this language is that it recognizes that subsections (f) and (h) are distinct means of dealing with various interests of nondebtor parties in property subject to sale under § 363(b). This explanation is consistent with our decision in *Moore v. Elder (In re Hatfield)*, 2009 WL 7751435, at *6-7 (9th Cir. BAP Mar. 17, 2009). In *Hatfield*, we examined this prefatory phrase and held that "[s]ection 363(h) . . . does not supplant § 363(f) when co-owned property is being sold, but rather permits a sale which might not otherwise be possible under § 363(f)." *Id.* at *7. Considering both context and common sense, we cannot ascribe any alternative or greater meaning to this prefatory language. In *Hatfield,* the debtor's real property was subject to an equitable interest of a nondebtor who challenged the trustee's sale of the property under § 363(h) for lack of evidence that equity existed, which she believed barred the estate from selling the property under § 363(h). *Id.* at *6. We stated that when "there is no bona fide dispute about a co-owner's interest in property, the co-owner does not consent to the sale, and state law will not permit a 'money partition' of the property, § 363(f) will not provide a trustee with the power to sell the co-owned property." *Id.* at *7. Yet, we recognized that "[i]f the trustee satisfies the requirements of § 363(h), then a sale can be pursued under §§ 363(b) and (f)." *Hatfield* involved the ability to compel a sale of jointly owned property under § 363(h). It did not address the use of § 363(f)(4) to sell that joint interest free and clear of liens against property that is not property of the estate.

that, because there was no underlying debt, there was no secured claim that encumbered its interest in the Rancho Property, and the bankruptcy court erred by ordering that its sale proceeds be disbursed to A&S.

Rule 7013 adopts Civil Rule 13 in adversary proceedings, "except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief."[11] In turn, Civil Rule 13(a) requires that a counterclaim must be pled against an opposing party if it arises out of the same transaction or occurrence as the opposing party's claim and if it does not require adding another party over whom the court cannot acquire jurisdiction. "If a defendant fails to bring a compulsory counterclaim, he is barred from asserting that claim in a future proceeding." *Barrios v. Equifax Info. Servs., LLC*, 2020 WL 2046395, at *3 (C.D. Cal. Feb. 14, 2020) (citing Civil Rule 13(a) and *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 276 (9th Cir. 1980)).

---

[11] A&S believes that that the bankruptcy exception in Rule 7013 is dispositive because "regardless of whether A&S's counterclaim would be against Groves or [Consultants] the Rancho Property is property of the bankruptcy estate." A&S cites *Winters ex rel. McMahon v. George Mason Bank*, 94 F.3d 130 (4th Cir. 1996), in support of this proposition. However, *Winters* says: "Most courts find that the debtor's interest in property jointly held by a nondebtor becomes property of the estate upon the filing of the bankruptcy petition, **but that the nondebtor's interest is not property of the estate**." *Id.* at 134 (emphasis added) (citing *Gorman v. Cochrane (In re Gorman)*, 159 B.R. 543, 546 (9th Cir. BAP 1993)); *see also Morgan v. Brady (In re Mitchell),* 2005 WL 6960171, at *7 (9th Cir. BAP Apr. 14, 2005). Accordingly, A&S's lien against Consultants' interest in the Rancho Property does not impact property of the estate for purposes of Rule 7013.

1. **Consultants was not an "opposing party" for purposes of Civil Rule 13(a).**

Civil Rule 13(a) requires a party to assert "as a counterclaim any claim that – at the time of its service – the pleader has against **an opposing party**" if that claim meets certain criteria. (Emphasis added.) Consultants was not a party to the adversary proceeding at all until A&S filed its crossclaim against it. Groves commenced her adversary proceeding against A&S for declaratory relief regarding the validity and extent of A&S's deeds of trust. Groves did not include Consultants as a party in her complaint although she raised a challenge to A&S's lien against **Consultants'** interest in the **Residence**. Therefore, Consultants was not an "opposing party" to A&S against which A&S was required to assert any compulsory counterclaims.[12]

We acknowledge that the Ninth Circuit in *Albright v. Gates*, 362 F.2d 928 (9th Cir. 1966), applied a broad definition of compulsory counterclaims beyond a defendant's claims against a plaintiff. *Albright* ruled that certain claims asserted by the defendant against the plaintiff also could be asserted against certain non-diverse third parties without undermining the district

---

[12] Groves did challenge A&S's deed of trust lien against her interest in the Rancho Property. But, as previously noted, Rule 7013 generally excuses a party sued by a debtor-in-possession from the compulsory counterclaim requirement. Accordingly, A&S was not required to bring any counterclaims against Groves—the only party to have asserted a claim against A&S and the only person to state any claim against the Rancho Property.

court's diversity jurisdiction. The court also said, in a single sentence and without any reference to the text of the rule or other analysis, that "under Rule 13(a), Federal Rules of Civil Procedure, the counterclaim was a compulsory one both as to [the plaintiff] and as to the new parties." *Id.* at 929. Shortly after *Albright* was decided, Civil Rules 13(h), 19, and 20 were amended to make clear that Civil Rules 19 and 20, and not Civil Rule 13, specify when a new party may be joined in the litigation by virtue of a counterclaim. *See* 8-E Rutter Grp. Prac. Guide: Fed. Civ. Proc. Before Trial (Nat'l Ed.) ¶ 8:1107 ("Although a counterclaim lies only against an 'opposing party,' the court may order joinder of additional parties whose presence would facilitate determination of the counterclaim ('necessary' or 'proper' parties under [Civil] Rules 19 and 20)."); *see also* Civil Rule 13(h) and the accompanying Advisory Committee Notes from the 1966 amendments ("The amendment of Rule 13(h) supplies the latter omission by expressly referring to Rule 20, as amended, and also incorporates by direct reference the revised criteria and procedures of Rule 19, as amended."). Accordingly, there is no such thing as a compulsory counterclaim against a non-party; rather, Civil Rule 19 determines when and whether an additional party must be joined.

    **2.    A&S's claims for money or foreclosure were not logically related to Groves' challenge to the validity of A&S's lien.**

Even if Consultants were treated as an "opposing party" in the adversary proceeding, A&S's counterclaim against it would still not be

24

compulsory. A counterclaim is compulsory under Civil Rule 13(a) if a "logical relationship" exists between the prospective counterclaim and the adverse party's claim. *See Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749 (9th Cir. BAP 2001) (citing *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992)). Federal courts liberally interpret what constitutes a "logical relationship" when determining whether claims arise out of the same "transaction or occurrence." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249, 1252 (9th Cir. 1987). "This flexible approach to [Civil] Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* at 1249 (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)). The Ninth Circuit has instructed:

> [a] logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*In re Pinkstaff*, 974 F.2d at 115 (citations omitted).

The note and deed of trust clearly arose out of the same transactions. In this instance, however, they do not bear the necessary logical relationship that would compel A&S to seek relief on the debt as a compulsory counterclaim. As noted above, Groves' adversary proceeding never called into question A&S's lien against Consultants' interest in the

25

Rancho Property, Consultants' personal liability, or the amount of the debt. Indeed, it is unclear exactly what Consultants now believes A&S was required to assert as a so-called compulsory counterclaim in the adversary proceeding: a claim for relief for a money judgment or for judicial foreclosure against Groves, Consultants, or both.

Consultants relies heavily on *Sanders v. First National Bank in Great Bend*, 114 B.R. 507 (M.D. Tenn. 1990), *aff'd sub nom, Sanders v. First National Bank. & Trust Co. in Great Bend*, 936 F.2d 273 (6th Cir. 1991), for the proposition that liens and the underlying debt arise from the same transaction and are, therefore, compulsory counterclaims. *Sanders* is inapposite. It involved a husband and wife who were liable on various debts related to their businesses. The wife and husband filed separate bankruptcy cases. The creditor first sued the husband to liquidate his debt as nondischargeable. *Id.* at 511. The husband stipulated to the amount of the debt but unsuccessfully challenged the nondischargeability claim. The creditor liquidated the wife's debt prior to bankruptcy and obtained a default judgment establishing her debt as nondischargeable. *Id.* Shortly before judgment was entered in the husband's nondischargeability case, both debtors sued the creditor for various claims including lender liability. *Id.* at 511-12.

The defendants in the lender liability case argued that the debtors failed to raise lender liability claims when they were sued on the debt. The debtors argued that the lender liability claims were not compulsory

counterclaims to the nondischargeability claims because they arose from a security agreement created after their notes and guarantees were executed. *Id.* at 513-14. The court rejected this argument because "garden variety lender liability claims alleging wrongful lending or collections practices arise out of the same transaction as the lenders' causes of actions to collect on the loans." *Id.* at 513. Accordingly, it held that the lender liability claims were compulsory counterclaims in the prior actions because the security agreement was logically related to the notes and only meaningful in relation to the debts the creditor sought to collect. *Id.*

The claims in *Sanders* were for lender liability, not foreclosure. As the *Sanders* court explained, the prior action against the wife and the nondischargeability claims raised the debtors' underlying liability and necessarily involved all "obligations created by the underlying loan agreement(s)." *Id.* at 514. In contrast, Groves' adversary proceeding only challenged the scope of A&S's lien in the two properties, but it never placed at issue Consultants' interest in the Rancho Property. Nor did she ever raise, much less challenge, the underlying debt. As *Sanders* recognized, "a claim and counterclaim may arise out of the same transaction within the literal terms of [Civil] Rule 13(a), yet not bear a logical relationship making the counterclaim compulsory." *Id.* (citing *Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 383 (6th Cir. 1984)). In short, any action by A&S to enforce the underlying debt was not logically related to Groves' challenge of the liens against the real property securing that debt.

27

### 3. Consultants' argument would violate the Rules Enabling Act.

The bankruptcy court held that Groves (now Consultants) could not use Civil Rule 13(a) to deprive A&S of its statutory right to nonjudicial foreclosure under Arizona law. By its very nature, no such cause of action exists for nonjudicial foreclosure.[13] Consultants' interpretation of Civil Rule 13(a) would negate A&S's statutory rights in violation of the Rules Enabling Act, 28 U.S.C. § 2072. The Act provides in relevant part that rules of practice and procedure "shall not abridge, enlarge or modify any substantive right."

Citing the Rules Enabling Act, courts in several jurisdictions have held that Civil Rule 13(a)'s compulsory counterclaim rule cannot be applied in a manner that abridges or modifies a secured creditor's substantive right under state law to elect between a judicial and a nonjudicial foreclosure.[14] *Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128,

---

[13] "In Arizona, non-judicial foreclosure sales, or trustees' sales, are governed by statute. When parties execute a deed of trust and the debtor thereafter defaults, A.R.S. § 33–807 empowers the trustee to sell the real property securing the underlying note through a non-judicial sale." *Hogan v. Wash. Mut. Bank, N.A.*, 277 P.3d 781, 782–83 (2012), *as amended* (July 11, 2012) (citations omitted).

[14] The Ninth Circuit Court of Appeals has not considered the Rules Enabling Act in the context of compulsory counterclaims and foreclosure rights. But it has recently and repeatedly invoked the Act in class actions to ensure the parties' substantive rights are not effectively modified by improper application of Civil Rule 23. *See, e.g., Wit v. United Behav. Health*, 58 F.4th 1080, 1095 (9th Cir. 2023) (holding that district court violated the Act when it "improperly allowed Plaintiffs to use [Civil] Rule 23 as a vehicle for enlarging or modifying their substantive rights" under ERISA); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (en banc) (holding that Civil Rule 23's class certification standards need only be proven

1130 (5th Cir. 1992); *see also Adelson v. Ocwen Loan Servicing, LLC*, 2020 WL 7294361, at *6 n.9 (E.D. Mich. Aug. 20, 2020), *report and recommendation adopted*, 2020 WL 6580628 (E.D. Mich. Nov. 10, 2020); *Fnbn-Rescon I LLC v. Citrus El Dorado LLC*, 2015 WL 11416171, at *5 (C.D. Cal. Feb. 6, 2015); *In re Draffen*, 731 S.E. 2d 435, 437-38 (N.C. Ct. App. 2012). For this reason, the Fifth Circuit, construing Texas law in a nonbankruptcy case, held:

> The federal counterclaim rule, Fed. R. Civ. P. 13(a), is inapplicable if it abridges, enlarges, or modifies the plaintiff's or defendant's substantive rights. Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default, and debtors have no right to force the lender to pursue a judicial foreclosure remedy. Application of rule 13(a) in the instant case would abridge the lender's substantive rights and enlarge the debtor's substantive rights. Thus, we believe it is appropriate in this case to follow the state's practice of permitting a lender to refrain from filing a counterclaim on overdue notes and to wait to pursue either a judicial or nonjudicial foreclosure remedy.

*Douglas*, 979 F.2d at 1130.

Several other courts following similar principles have held under Civil Rule 13(a), or state law analogues, that compulsory counterclaim rules cannot bar state law nonjudicial foreclosure proceedings. *See, e.g.*, *Threadgill v. Wells Fargo Bank, N.A.*, 2017 WL 3268957, at *3 (Tenn. Ct. App. Aug. 1, 2017); *Deschamps v. Treasure State Trailer Ct., Ltd.*, 254 P.3d 566, 569

---

by a mere preponderance of the evidence, rather than by clear and convincing evidence, because class action practice and procedure is "substantively neutral" and cannot modify the parties' substantive rights without running afoul of the Act).

(Mont. 2011); *Belote v. McLaughlin*, 673 S.W. 2d 27, 30–31 (Mo. 1984).

Arizona, like most states, allows real property secured lenders to choose between judicial and nonjudicial foreclosure remedies and does not allow the borrower to change the lender's choice. *See* Ariz. Rev. Stat. § 33-807(a); *see also Hogan*, 277 P.3d at 782-84; *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 318 P.3d 419, 426 (Ariz. Ct. App. 2014). As recognized by *Douglas* and its progeny, Consultants' proposed application of Civil Rule 13(a) would give primacy to a procedural rule at the expense of A&S's substantive statutory rights in violation of the Rules Enabling Act. And as recognized by the bankruptcy court and *Deschamps*, given the right to nonjudicial foreclosure, there is no "counterclaim" to bring in satisfaction of Rule 13(a). Both lines of cases reflect a judicial unwillingness to utilize federal and state rules of practice to permit a borrower to deprive its lender of its choice of remedies. *See Douglas,* 979 F.2d at 1130 & n.3.

We agree with the bankruptcy court that Consultants may not use Civil Rule 13(a) to deprive A&S of its statutory right to seek nonjudicial foreclosure of its deed of trust encumbering Consultants' interest in the Rancho Property.

**C.    A&S was not judicially estopped from asserting its lien rights.**

Consultants contends that A&S is judicially estopped from disputing that it forfeited its claim against Consultants under Civil Rule 13(a). It relies on A&S's prior amendment of its answer in Groves' adversary proceeding in which it successfully argued for leave to amend to assert a compulsory

30

counterclaim for reformation. Consultants believes that it is unfair for A&S now to "reverse course" when it previously sought leave to amend to plead a compulsory counterclaim. According to Consultants, it is contradictory for A&S to be allowed to amend its answer in the adversary proceeding to assert a compulsory counterclaim for reformation of the deeds of trust and now argue that its claims for the underlying debts were not also compulsory counterclaims.

The Ninth Circuit has cautioned against reducing judicial estoppel to a single set of factors. *See Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013). Even so, it also has observed that three factors typically inform a court's decision as to whether it should apply the doctrine: (1) the party takes "clearly inconsistent" positions; (2) the party's success in persuading the first court to accept the former position is such that "judicial acceptance of [the] inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[;]" and (3) the party would "derive an unfair advantage or impose an unfair detriment on the opposing party" absent application of judicial estoppel. *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 750-51 (2001)).

Critical to any claim of judicial estoppel, the adverse party must assert "clearly inconsistent" positions during the course of litigation in a manner that suggests that the litigant has misled the court. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1045 (9th Cir. 2016) (citing *Hamilton*, 270 F.3d at 782). There is simply no inconsistency between A&S's

31

former position that its reformation claims were subject to the compulsory counterclaim rule and its current position that the enforcement of the underlying debt was not a compulsory counterclaim. A&S previously argued that its claim for reformation of the deeds of trust at issue was a compulsory counterclaim to Groves' lien challenge in the adversary proceeding. That is a far cry from disputing Consultants' present argument that the underlying debt also was a compulsory counterclaim. For the same reasons that compel our finding that there was no logical relationship between the determination of the validity of the deeds of trust and collection of the underlying debt, there is nothing inconsistent concerning A&S's positions in treating the former but not the latter as a compulsory counterclaim.

Accordingly, we reject as meritless Consultants' judicial estoppel argument.

## CONCLUSION

For the reasons set forth above, we AFFIRM.[15]

---

[15] In its responsive brief, A&S requests an award of attorney's fees it has incurred on appeal on multiple grounds. The request is not set forth in a separate motion and is not supported by any detailed presentation of the facts and law justifying a fee award. *See generally De Jesus Gomez v. Stadtmueller (In re De Jesus Gomez)*, 592 B.R. 698, 708 (9th Cir. BAP 2018) (citing Rule 8020 and explaining how and when the Panel routinely awards fees for a frivolous appeal); *ZTE Elecs. Corp. v. Joseph (In re Amoroso)*, 2008 WL 8444823, at *4 n.9 (9th Cir. BAP July 11, 2008) (same). A&S's request for attorney's fees is hereby ORDERED DENIED without prejudice for failure to present its request in a separate motion detailing the facts and law supporting the fee request. In any such motion, A&S must be clear who it claims is liable for the attorney's fees and cite the specific statutes, rules, or contract provisions from which its fee claim(s) arise.